2015 PA Super 59

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ADAM SMERCONISH | |
| Appellant | No. 882 MDA 2014 |

Appeal from the Order entered April 30, 2014
In the Court of Common Pleas of Mifflin County
Criminal Division at No: 44-CV-1468-13

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, and STABILE, JJ.

OPINION BY STABILE, J.:                    **FILED MARCH 24, 2015**

Appellant, Adam Smerconish, appeals from the April 30, 2014 order entered in the Court of Common Pleas of Mifflin County denying his request to expunge mental health records relating to a 2004 involuntary commitment pursuant to section 302 of the Mental Health Procedures Act, 50 P.S. § 7302.[1]  Following review, we affirm.

The trial court explained:

> In the instant case, Appellant petitioned for restoration of firearm rights pursuant to 18 Pa.C.S.A. [§] 6105(f)(1) and review by court pursuant to 18 Pa.C.S.A. [§] 6111.1(g)(2).  The court granted Appellant's petition for restoration of firearm rights

---

[1] The April 30 order denied Appellant's expunction request but granted his request under 18 Pa.C.S.A. § 6105(f)(1) to reinstate his right to possess firearms.  The grant of the reinstatement of his right to possess firearms is not challenged in this appeal.

pursuant to 18 Pa.C.S.A. [§] 6105(f)(1) as the court determined that the applicant may possess a firearm without risk to the applicant or any other person. However, the court did not grant expungement of Appellant's involuntar[y] commitment pursuant to section 302 of the Mental Health Procedures Act as . . . 18 Pa.C.S.A. [§] 6105(f)(1) is not a proper vehicle for expunging such records. Rather, the court reviewed Appellant's involuntar[y] commitment pursuant to 18 Pa.C.S.A. [§] 6111.1(g)(2) to determine whether Appellant was entitled to expungement. 18 Pa.C.S.A. [§] 6111.1(g)(2) provides:

(2) A person who is involuntarily committed pursuant to section 302 of the Mental Health Procedures Act may petition the court to review the sufficiency of the evidence upon which the commitment was based. If the court determines that the evidence upon which the involuntary commitment was based was insufficient, the court shall order that the record of the commitment submitted to the Pennsylvania State Police be **expunged**. A petition filed under this subsection shall toll the 60-day period set forth under Section 6105(a)(2).

18 Pa. Cons. Stat. Ann. § 6111.1 (West)

The court denied Appellant's petition for review pursuant to 18 Pa.C.S.A. [§] 6111.1(g)(2) as the court determined that there was sufficient evidence [for] the involuntary commitment based upon the involuntary commitment paperwork, all [of] which documents were admitted without objection. Appellant was admitted to the Lewistown Hospital on a 302 commitment after making threats to commit suicide. Appellant emailed his sister through the internet about his feelings of not wanting to live as a failure. Appellant was a student at Penn State University and had failing grades. Appellant had gained sixty (60) pounds. Appellant admitted to sending e-mails to his sister exploring painless ways that he could die. Appellant also admitted that after that time he went on to the internet and read about suicide and decided that he was frightened of such acts. Appellant was diagnosed with Major Depression, recurrent with suicidal ideation and Eating disorder, NOS with binge behaviors on Axis 1 of the DSM. Patient was diagnosed with personality disorder with narcissistic traits on Axis II of the DSM. Significantly, Appellant had a Global Assessment of Functioning of 30.

J-A34036-14

Bruce N. Eimer, PhD., in his report, asserts that Appellant was subject to a "rendition" alleging that Appellant's involuntary commitment was the result of [hearsay], and "he said, she said." Dr. Eimer also makes a due process argument by scrutinizing the treatment administered and the protocol followed after Appellant was involuntarily committed and the fact that Appellant was discharged within 72 hours, the maximum time allotted under a 302 commitment. However, the court does not find Dr. Eimer's argument persuasive. With regard to the alleged hearsay and "he said, she said," the 302 petition states that Appellant instant messaged his sister threatening twelve (12) times to kill himself. Appellant *admitted* to these threats. As such, the court finds that there was sufficient evidence for the involuntary commitment. Further, the treatment administered and the protocols followed after Appellant was involuntarily committed and the fact that Appellant was discharged within 72 hours is irrelevant to whether or not there was sufficient evidence to involuntarily commit Appellant.

Trial Court Opinion pursuant to Pa.R.A.P. 1925(a) (T.C.O.), 7/3/14, at 2-3

(emphasis and italics in original) (references to hearing exhibits omitted).[2]

Appellant presents three issues for this Court's consideration:

I.    Did the learned trial judge err in failing to expunge [Appellant's] mental health commitment?

II.   Did the learned trial judge err in following [*In re Keyes*] in that the requirements of *Keyes* were mere dicta?

III.  Did the learned trial judge err in allowing hearsay and hearsay on hearsay in evidence at the time of the within

_____

[2] We remind counsel for Appellant of the requirement to include in his brief a copy of the Rule 1925(b) statement of errors complained of on appeal. *See* Pa.R.A.P. 2111(a)(11). In addition, Appellant is required to provide a statement of both the scope of review and the standard of review. *See* Pa.R.A.P. 2111(a)(3). Appellant's brief includes neither required matter. We also take this opportunity to remind counsel for Appellee of the requirement for lettering in appellate briefs to be no smaller than 14 point in the text and 12 point in the footnotes. *See* Pa.R.A.P. 124(a)(4).

matter to support the Pennsylvania State Police's position that [Appellant] has not satisfied the requirements in [*In re Keyes*]?

Appellant's Brief at 3. "Our well-settled standard of review in cases involving a motion for expunction is whether the trial court abused its discretion." *In re Keyes*, 83 A.3d 1016, 1022 (Pa. Super. 2013) (citing *Commonwealth v. A.M.R.*, 887 A.2d 1266, 1268 (Pa. Super. 2005)).

In his first issue, Appellant questions whether the trial court erred in failing to expunge his mental health commitment records. Recognizing our standard of review, we consider whether the trial court abused its discretion by concluding the records could not be expunged. We conclude there was no abuse of discretion.

As noted in the quoted excerpt from the trial court opinion, the process for expunging mental health records is explained in 18 Pa.C.S.A. § 6111.1(g)(2). That subsection provides that an individual seeking expunction of involuntary commitment records may petition the court "to review the sufficiency of the evidence upon which the commitment is based." In this case, Appellant requested a review of the commitment evidence in conjunction with his request to have his right to possess firearms restored.

Appellant argues that evidence upon which his commitment was based was insufficient. He contends there was no proof, as required by 50 P.S. § 7301(b)(2)(ii), that he "made threats to commit suicide and [] committed acts which are in furtherance of the threat of suicide." Appellant's Brief at

17 (citations omitted).[3] The record does not support his assertion. Officer Scicchitano, a 25-year veteran of the State College Borough Police Department, testified that he was instructed by dispatch to contact Appellant's father who, in turn, referred the officer to Appellant's mother. Appellant's mother informed the officer that her daughter, Appellant's sister, reported Appellant sent her 12 different "instant messages" in which he threatened to kill himself and that he was looking for painless ways to do it. Notes of Testimony (N.T.), 4/21/14, at 59. When the officer arrived at Appellant's fraternity house, he explained to Appellant why he was there, "specifically [telling] him I was there because he had threatened to kill himself." *Id.* at 60. Appellant "admitted to saying that. He said he probably shouldn't have – something to the effect he shouldn't have said things like that or in that fashion." *Id.* As recorded in the History and Physical Examination record from Lewistown Hospital, Appellant confirmed he sent emails to his sister about exploring ways he could die and admitted he had gone on the Internet to read about suicide, but decided he was frightened of suicidal acts. N.T., 4/21/14, Exhibit PSP 1. Appellant

---

[3] 50 P.S. § 7301(b)((2)(ii) provides, "Clear and present danger to himself shall be shown by establishing that within the past 30 days . . . the person has attempted suicide and that there is the reasonable probability of suicide unless adequate treatment is afforded under this act. For the purposes of this subsection, a clear and present danger may be demonstrated by the proof that the person has made threats to commit suicide and has committed acts which are in furtherance of the threat to commit suicide."

acknowledged that his instant message threats to kill himself were as recent as the night before the officer arrived at the fraternity house to see him. N.T., 4/21/14, Exhibit PSP 4.

In ***Commonwealth v. Jackson***, 62 A.2d 433 (Pa. Super. 2013), this Court recognized:

> The leading case on the sufficiency of a 302 warrant is ***In re J.M.***, 556 Pa. 63, 726 A.2d 1041 (1999). Our Supreme Court held therein that the standard for evaluating the validity of such documents is whether reasonable grounds exist to believe that a person is severely mentally disabled and in need of immediate treatment, a standard that is "clearly less exacting than the probable cause standard." ***Id.*** at 1049. Such a warrant may be based upon hearsay "in light of the emergency nature, therapeutic purpose and short duration" of a section 302 commitment. ***Id.*** at 1046–47 n. 9. The "guiding inquiry" is whether, "when viewing the surrounding facts and circumstances, a reasonable person in the position of the applicant for a section 7302 warrant could have concluded that an individual was severely mentally disabled and in need of immediate treatment." ***Id.***
>
> The issue of whether allegations in an application were sufficient to establish an act in furtherance of a threat to commit harm was addressed by this Court in ***In re R.D.***, 739 A.2d 548, 555 (Pa. Super. 1999). We held therein that an elderly woman's act of picking up her cane in an effort to hit another, together with verbal threats of harm, constituted an "act in furtherance of the threat to commit harm," as contemplated by the statute.

***Id.*** at 439.

Based on the record, we agree with the trial court's conclusion that there was sufficient evidence for an involuntary commitment. The twelve instant messages Appellant sent to his sister provided a basis for concluding Appellant was severely mentally disabled and in need of immediate

treatment. His online research seeking painless methods of committing suicide constituted an act in furtherance of the threat to commit harm. We find no abuse of discretion on the part of the trial court for denying Appellant's petition to expunge the records from that commitment. Therefore, Appellant's first issue fails for lack of merit.

In his second issue, Appellant asserts that that the trial judge erred in following **Keyes, supra**, because the requirements of **Keyes** were dicta. In **Keyes**, a state trooper was involuntarily committed to a mental health facility, first under 50 P.S. § 7302[4] and subsequently under the more restrictive provisions of 50 P.S. § 7303.[5] As a result, Keyes was barred from possessing firearms under 18 Pa.C.S.A. § 6105.

More than two years after his commitment, Keyes sought to have his firearms rights reinstated. The trial court reinstated his firearms rights but did not expunge Keyes' involuntary commitment record. After retaining new counsel, Keyes sought expunction of the records under 18 Pa.C.S.A. § 6105(f)(1). The trial court denied the request based on this Court's decision in **In re Jacobs**, 15 A.3d 509 (Pa. Super. 2011), and stated, "subsection 6105(f)(1) conveys no such authority. Subsection 6105(f)(1) is intended

---

[4] 50 P.S. § 7302 provides for involuntary emergency examinations and treatment authorized by a physician not to exceed 120 hours.

[5] 50 P.S. § 7303 authorizes extended involuntary emergency treatment certified by a judge or mental health review officer not to exceed 20 days.

- 7 -

solely for the restoration of the right to possess firearms, not for the expunction of a record of involuntary commitment under the [Mental Health Procedures Act]." *Keyes*, 83 A.3d at 1022.

Appellant attempts to distinguish the facts of his case from those in *Keyes*, noting Keyes was committed under 50 P.S. § 7303 as well as 50 P.S. § 7302 whereas Appellant was committed only under the less restrictive 50 P.S. § 7302. However, Appellant ignores the fact that 18 Pa.C.S.A. § 6105 provides the procedure for reinstating the right to possess firearms, not for expunction of records, which is governed by Pa.C.S.A. § 6111.[6] As this Court explained in *Keyes*:

> First, section 6105(f)(1) of the Uniform Firearms Act makes no mention of expunction of records; rather, the statute is clearly directed as a vehicle for the restoration of the right to possess firearms by those who[] have previously been involuntarily committed under the [Mental Health Procedures Act]. When the Legislature chose to provide for the expunction of mental health records under the Uniform Firearms Act, it specifically did so in section 6111.1(g) of the Act.
>
> Second, if we interpreted section 6105(f)(1) as conveying a broad power to expunge mental health records, it would render section 6111.1(g) mere surplusage because the power to expunge mental health records thereunder would already be provided for by section 6105(f)(1). "Basic rules of statutory construction set forth that statutes shall be construed, if

---

[6] As reflected in the excerpt of the statute quoted by the trial court above, 18 Pa.C.S.A. § 6111(2) provides the process by which a person involuntarily committed under 50 P.S. § 7302 of the Mental Health Procedures Act may petition the court to review the evidence upon which the commitment was based in an effort to have the record of the commitment expunged.

possible, to give effect to all its provisions and that the legislature did not intend any statutory language to exist as mere surplusage." ***Commonwealth v. Baker***, 72 A.3d 652, 662 (Pa. Super. 2013), quoting ***Commonwealth v. Velez***, 51 A.3d 260, 265 (Pa. Super. 2012) (citations omitted) and citing 1 Pa.C.S.A. § 1925(a) and (b). Appellant's proposed interpretation of section 6105(f) of the Uniform Firearms Act would improperly render another section of that Act as mere surplusage.

. . .

In sum, we find that section 6105(f)(1) does not provide authority for expunging mental health commitment records. The only authority for doing so under the Uniform Firearms Act is located under section 6111.1(g). Our interpretation of these sections is the only way that both can be given full meaning without rendering either section superfluous.

***Id.*** at 1023-24.

We reject Appellant's assertion that this Court's statements regarding §§ 6105(f)(1) and 6111.1(g) are merely dicta. We find no abuse of discretion or error of law on the part of the trial court for relying on **Keyes** in determining that § 6105(f)(1) did not authorize expunction of involuntary commitment records. Appellant's second issue does not provide any basis for relief.

In his third issue, Appellant complains that the trial court improperly admitted during Appellant's hearing both hearsay and what he terms "hearsay on hearsay." Appellant's Brief at 21-23. Addressing a hearsay challenge, this Court has recognized:

[T]he standard of review of a trial court's admission or exclusion of evidence is well established and very narrow: Admission of evidence is a matter within the sound discretion of the trial

- 9 -

court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.

*Commonwealth v. Akbar*, 91 A.3d 227, 235 (Pa. Super. 2014) (internal citations omitted).

Appellant's hearsay argument fails for a number of reasons. First, to the extent the hearsay and "hearsay on hearsay" evidence Appellant challenges were statements reflected on the application for commitment entered into evidence by stipulation as PSP 4, those statements were admissible by virtue of the stipulation of the parties agreeing to admission of the document. Second, in *In re R.D.*, 739 A.2d 548 (Pa. Super. 1999), this Court considered the purpose of the Mental Health Procedures Act and discussed its due process implications, stating:

> The legislature's purpose in enacting the Mental Health Procedures Act was "to assure the availability of adequate treatment to persons who are mentally ill" and "to make voluntary and involuntary treatment available where the need is great and its absence could result in serious harm to the mentally ill person or to others." Mental Health Procedures Act, § 102. *See also In re McMullins*, 315 Pa. Super. 531, 462 A.2d 718, 722 (1983). To achieve these objectives within the constraints of due process "the scheme adopted by the legislature here envisions that more extensive procedural or 'due process' protections will apply as the amount of time a person may be deprived of liberty increases above a bare minimum." *Matter of Seegrist*, 517 Pa. 568, 574, 539 A.2d 799, 802 (1988). The resulting progression in sections 302, 303, and 304, evinces the legislature's clear concern that the procedural protections afforded our citizens reflect the extent of the

deprivation of liberty at stake. ***In re Hancock***, 719 A.2d 1053, 1057 (Pa. Super. 1998).

> Section 302, which provides for involuntary emergency examination and treatment, allows confinement of the patient for up to 120 hours upon certification by a physician, or authorization by the county mental health administrator. Mental Health Procedures Act, § 302(a), (d). Though action by the administrator requires issuance of a warrant, "[i]n light of the emergency nature, therapeutic purpose and short duration" of a section 302 commitment, the warrant need not be supported by probable cause and may be based upon hearsay. ***In re J.M.***, 556 Pa. [63, 75–76 n. 9], 726 A.2d [1041, 1046–47 n. 9].

***Id.*** at 555. ***See also Jackson,*** 62 A.2d at 439.

Appellant was committed under section 302. Appellant complains that Officer Scicchitano was allowed to testify about his telephone conversations with Appellant's father and with Appellant's mother during which information was conveyed about threatening instant messages Appellant sent to his sister. The testimony was offered at the hearing to explain the officer's role in the issuance of the warrant for Appellant's section 302 commitment.[7] As

_____

[7] In ***Akbar***, which involved a challenge to statements explaining the course of police conduct, this Court explained:

> Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ***Commonwealth v. Dent***, 837 A.2d 571, 577 (Pa. Super. 2003), ***appeal denied***, 581 Pa. 671, 863 A.2d 1143 (2004); Pa.R.E. 801(c). Nevertheless, certain out-of-court statements offered to explain the course of police conduct are admissible; such statements do not constitute hearsay because they are offered not for the truth of the matters asserted but merely to show the information upon which police acted. ***Dent, supra*** at 577–79. ***See also***

*(Footnote Continued Next Page)*

- 11 -

this Court recognized in **In re R.D., supra**, a warrant for a section 302 commitment need not be supported by probable cause and may be based on hearsay.

Finally, the trial court noted it "relied solely on the involuntary commitment paperwork in making its determination that there was sufficient evidence for the involuntary commitment." T.C.O., 7/3/14, at 4. Therefore, even if it could be determined that the trial court erred in allowing the testimony, any error is harmless. Appellant is not entitled to relief based on his third issue.

Because Appellant is not entitled to relief on any of his three issues, we shall affirm the order of the trial court.

*(Footnote Continued)* ——————————

> **Commonwealth v. Cruz**, 489 Pa. 559, 414 A.2d 1032 (1980) (holding content of police radio call did not constitute hearsay where Commonwealth introduced call to explain police conduct and not to prove truth of content of tape).

**Akbar**, 91 A.3d at 236. Although not exactly on point with the present case, the same analysis is appropriately applied here where the officer was not offering statements for the truth of the matters asserted but rather to show the information upon which the police acted in the course of issuing the warrant for Appellant's commitment.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/24/2015