J-A33040-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN CURRENT, | : | |
| | : | |
| Appellant | : | No. 865 EDA 2015 |

Appeal from the Order Entered March 2, 2015
in the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-MD-0001094-2014

BEFORE:    FORD ELLIOTT, P.J.E., STABILE, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED JANUARY 05, 2016**

John Current (Appellant) appeals from the March 2, 2015 order that denied his petition for restoration of firearm rights, wherein Appellant sought to expunge the record of his involuntary mental health commitment pursuant to 18 Pa.C.S. § 6111.1(g)(2), and have his firearm rights restored under 18 Pa.C.S. § 6105(f)(1).  We affirm.

On May 19, 2013, Appellant's son executed an application to have Appellant receive involuntarily emergency examination and treatment under 50 P.S. § 7302.  The County Administrator prepared a warrant pursuant to which Appellant was taken to Lower Bucks Hospital.  Records show that Appellant arrived at the facility at 7:15 pm and was examined by Dr. M. Pasqualone at 7:40 pm.  PSP Exhibit 1.  Dr. Pasqualone opined that Appellant was severely mentally disabled and in need of treatment.  **Id.**

_____
* Retired Senior Judge assigned to the Superior Court.

Appellant was discharged with a diagnosis of major depression and alcohol abuse, and referred for outpatient treatment. PSP Exhibit 6.

On May 1, 2014, Appellant filed a petition in which he sought expungement of his record and restoration of his firearm rights based upon the claim that his involuntary commitment was improper. Appellant also proffered the report of a privately-retained expert who opined that Appellant is not a risk to himself or anyone else. Both the Commonwealth and the Pennsylvania State Police filed answers to Appellant's petition. The trial court held a hearing on November 6, 2014. After reviewing briefs submitted by the parties, the trial court entered an order denying the petition.

Appellant timely filed a notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925. On appeal, Appellant claims that the trial court erred in denying the expungement and the restoration of his firearm rights, arguing that the evidence was insufficient to justify his involuntary commitment.

> Our well-settled standard of review in cases involving a motion for expunction is whether the trial court abused its discretion. However, [q]uestions of evidentiary sufficiency present questions of law; thus, our standard of review is *de novo* and our scope of review is plenary. In conducting sufficiency review, we must consider the evidence in the light most favorable to the [party that] prevailed upon the issue at trial.

*In re Vencil*, 120 A.3d 1028, 1032 (Pa. Super. 2015) (internal citations and quotation marks omitted).

- 2 -

Following a *de novo* and plenary review of the certified record, the briefs for the parties, the relevant law, and the oral argument of counsel, we conclude that the opinion of the Honorable Diane E. Gibbons thoroughly addresses Appellant's issues and arguments and applies the correct law to findings of fact that are supported by the record. Therefore, we adopt the trial court's opinion of July 21, 2015 as our own and hold, based upon the reasons stated therein, that the trial court committed neither an error of law nor an abuse of discretion in denying Appellant's petition. The parties shall attach a copy of the trial court's July 21, 2015 opinion to this memorandum in the event of further proceedings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 1/5/2016

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    :     No.    CP-09-MD-0001094-2014
[865 EDA 2015]

v.                               :

JOHN CURRENT                       :

## OPINION

On May 1, 2014, John Current ("Petitioner"), filed a Petition for Review by Court

Pursuant to 18 Pa.C.S. Section 6111.1(g)(2) seeking to expunge any and all records relating to

his involuntary mental health commitment in 2013. He also filed a Petition for Restoration of

Firearm Rights Pursuant to 18 Pa.C.S. Section 6105(f)(1) seeking to be relieved of any and all

disabilities with respect to possession, use, manufacture, control sale and/or transfer of firearms

under the Pennsylvania Uniform Firearms Act, 18 Pa.C.S. Section 6101 *et seq.* On March 2,

2015, following a hearing and after consideration of the memoranda of law submitted by the

parties, this Court denied both Petitions. Petitioner thereafter filed a timely appeal.

On May 19, 2013, Petitioner was involuntarily committed pursuant to section 302 of the

Mental Health Procedures Act, 50 P.S. § 7302. Petitioner sought to expunge the involuntary

commitment on the grounds that the commitment violated the requirements of the Mental Health

Procedures Act. He asserted that he was not examined in a timely manner as required by section

7302(b) of the Act and that the evidence was insufficient to support the commitment.

Section 7302(b) establishes the procedures for involuntary examination and treatment. It

requires that a person taken to a facility be "examined by a physician within two hours of arrival

in order to determine if the person is severely mentally disabled within the meaning of section

301 and in need of immediate treatment." Petitioner's assertion that he was not examined by a physician within two hours of his arrival at Lower Bucks Hospital is belied by the record. The Physician's Evaluation admitted by the Commonwealth and signed by the examining physician demonstrates that Petitioner arrived at Lower Bucks Hospital at 7:15 p.m. on May 19, 2013. He was examined at 7:40 p.m. that same date. The examining physician found Petitioner was "drinking alcohol yesterday and stated to others and wrote that he would shoot himself in the head to kill himself" and that Petitioner required "inpatient psychiatric care." The examining physician formed the opinion that Petitioner was "severely mentally disabled and in need of treatment" and therefore recommended that he be admitted to a designated facility for a period of treatment not to exceed 120 hours.[1]

Expungement of commitment records based upon the sufficiency of the evidence is governed by 18 Pa.C.S. Section 6111.1(g)(2). Commonwealth v. Smerconish, 112 A.3d 1260 (Pa.Super.2015). Section 6111.1(g)(2) provides:

> A person who is involuntarily committed pursuant to section 302 of the Mental Health Procedures Act may petition the court to review the sufficiency of the evidence upon which the commitment was based. If the court determines that the evidence upon which the involuntary commitment was based was insufficient, the court shall order that the record of the commitment submitted to the Pennsylvania State Police be expunged. A petition filed under this subsection shall toll the 60–day period set forth under Section 6105(a)(2).

The standard to be applied in evaluating the sufficiency of the evidence is whether reasonable grounds exist to believe that a person is severely mentally disabled and in need of immediate treatment, a standard that is "clearly less exacting than the probable cause standard." In re J.M., 556 Pa. 63, 78, 726 A.2d 1041, 1049 (1999). "The guiding inquiry is whether, when

---

[1] Ex. PSP-1 p. 7 of 7.

viewing the surrounding facts and circumstances, a reasonable person in the position of the applicant for a section 7302 warrant could have concluded that an individual was severely mentally disabled and in need of immediate treatment." Commonwealth v. Jackson, 62 A.3d 433, 439 (Pa.Super.2013) quoting In re J.M., 556 Pa. 63, 726 A.2d 1041 (1999).

A person is severely mentally disabled when, as a result of mental illness, the person's ability to exercise self-control or to care for himself is so lessened that he poses "a clear and present danger of harm" to himself or others. 50 P.S. § 7301(a). The criteria for establishing a clear and present danger to oneself is set forth in 50 P.S. § 7301(b) which provides":

> (2) Clear and present danger to himself shall be shown by establishing that within the past 30 days:
>
> ***
>
> (ii) the person has attempted suicide and that there is the reasonable probability of suicide unless adequate treatment is afforded under this act. For the purposes of this subsection, a clear and present danger may be demonstrated by the proof that the person has made threats to commit suicide and has committed acts which are in furtherance of the threat to commit suicide;

50 Pa.C.S. § 7301(b)(2)(ii). A suicide attempt occurs when a person clearly articulates or demonstrates an intention to commit suicide and has committed an overt action in furtherance of the intended action. 55 Pa.Code § 5100.84(g).

Petitioner's assertion that the evidence was insufficient to support his commitment is without merit. On May 19, 2013, Petitioner's 25-year-old son, Steven Current, submitted an Application for Involuntary Emergency Examination and Treatment under Section 302 of the Mental Health Procedures Act, 50 P.S. § 7101 *et seq.,* alleging that Petitioner, then age 56,[2] was

---

[2] Petitioner's date of birth is August 31, 1956. Pet. For Restoration of Firearm Rights Pursuant to 18 Pa. C.S.A Section 6105(f)(1) & Pet. For Review By Ct. Pursuant To 18 Pa. C.S.A. Section 6111.1(g)(2) ¶ 4.

severely mentally disabled, specifically, that he posed a clear and present danger of harm to himself and others.[3] He described the events which led him to file the application as follows:

> 5x yesterday he threatened to kill himself. My dad works for me at my karate school. [H]e passed his black belt, he began drinking at 10am and got trashed. [H]e showed up at the school at 11am and was drunk. [He] continued to drink throughout the day. [W]e were at a party at a [student's] house, [he] continued to drink, got stumbling falling down drunk and was [verbally] and physically abusive. [H]e was saying "giving me my f---ing keys, I'll knock you the f--- out[."] I escorted him outside and he was in my face and bumping me on the chest and he grabbed at my chest. I had to call my [brother] to get him to [pick] him up. [O]ther people at the party stopped him from getting in his car. [H]e threatened to physically move them and assault them if they didn't move. [M]y brother got him [into] the car and took him home. I followed [because] I feared for my mom's safety [because] he was belligerent and drunk and violent. We got home and he continued to yell and become [belligerent]. He grabbed my mom hard and scared her. We thought he was going to hit her. [I]t escalated and the police were called. [W]e didn't feel safe there. [B]efore the police arrived he was in the garage [with] me and my [brother] and yelled he wanted his guns, he wanted his 45's. [H]e kept yelling "[it's] my right to kill myself if [I] want and f--- everyone else I'll kill them [too] if they try to stop me[."] [H]is mental health is declining. He told me more than once yesterday and in weeks past "I would lay down in the grass when it's raining and put the gun to my head and there would be no mess[."] He has said this multiple times. He has access to guns in the home. There are multiple guns and he is a Veteran, ranger trained.[4]

Based upon this application, a warrant was issued.[5] The warrant was executed at Petitioner's home on May 19, 2013 by officers of the Lower Southampton Township Police Department, one of whom was Corporal Louis Montalbano.[6] Upon entering the residence, Corporal Montalbano observed multiple handguns and long guns inside the residence. Two pistols were in plain view in the TV room. Those two firearms were inspected by Corporal

---

[3] Ex. PSP-1 p. 2 of 7.
[4] Id. p. 3 of 7 (The profanity contained in the original document was edited by the court.)
[5] Id. p. 4 of 7.
[6] N.T. pp. 80-82, 84.

4

Montalbano and were determined to be loaded. Loose ammunition was found near one of those firearms. Corporal Montalbano examined the long guns and determined that some of those guns were also loaded.[7] Corporal Montalbano also observed a Word document open on a computer screen inside the residence. The document read, "Honey these are your weapons now. If you don't want them or can't use them, kindly sell them and give the money to Charity."[8]

As previously stated, the initial examining physician formed the opinion that Petitioner was "severely mentally disabled and in need of treatment" and therefore recommended that he be admitted to a designated facility for a period of treatment not to exceed 120 hours.[9] On May 20, 2013, Petitioner was examined by a second physician who also determined that Petitioner was in need of inpatient care. The second physician found that Petitioner posed an imminent danger to himself, indicating that Petitioner had a current plan for suicide or serious self-harm and persistent thoughts of suicide or serious self-harm that could not be adequately monitored at a lower level of care due to insufficient behavioral care provider availability, inadequate patient support system, and patient characteristics such as high impulsivity and unreliability.[10] On May 22, 2013, Petitioner executed a written consent for inpatient treatment.[11]

Petitioner was discharged on May 24, 2013. The discharge summary ("the summary") contained the following information. Petitioner's chief complaint was, "I stopped my medications." Petitioner admitted that two days prior to the May 18th incident, he had stopped taking Seroquel and Cymbalta, medications that had been prescribed by his primary care physician for insomnia and depression. As to the events on May 18th, Petitioner admitted that he

---

[7] N.T. pp. 84-89.
[8] Ex. C-1.
[9] Ex. PSP-1 p. 7 of 7.
[10] Ex. PSP-4.
[11] Ex. PSP-2.

5

"pushed [his] wife," that he drank excessively, and that he lost control. Upon admission, Petitioner displayed psychomotor retardation, intermittent paranoid ideation, grossly impaired judgment, and limited insight. Petitioner was tearful almost throughout the intake interview and stated that he hears God's voice almost daily, guiding him. Petitioner reported that he had been depressed and admitted to excessive alcohol abuse, secondary to suicidal ideation. The summary notes that there is a family history of mental illness. The summary also documented an interview with Petitioner's wife wherein she stated that she considered seeking a Protection from Abuse Order but decided that she would not do so if Petitioner agreed to treatment. The final diagnosis was major depression, alcohol abuse, and marital conflicts. Petitioner was prescribed: Seroquel, an antipsychotic compound; Serotonin and Norepinephrine; Cymbalta; Remeron, an antidepressant; and Campral, an alcohol detox compound. Medications were prescribed and Petitioner was provided with a 30-day supply of those medications upon discharge.[12] In his discharge instructions, Petitioner was directed to maintain contact with his case manager and to go to Pendell Mental Health after work to address alcohol abuse and mental health issues.[13]

As explained above, a person is deemed to be a clear and present danger to themselves if that person "attempted suicide" with in the past 30 days. 50 P.S. § 7301(b)(2)(ii). Petitioner asserts that he cannot be deemed to have "attempted suicide" because he did not use the firearms available to him. However, "attempted suicide" as that term is defined does not require a finding that the person actually used or attempted to use deadly force. See Commonwealth v. Smerconish, 112 A.3d 1260 (Pa.Super.2015) (appellant's online research seeking painless methods of committing suicide constituted act in furtherance of threat to commit harm); In re R.F., 914 A.2d 907 (Pa.Super.2006) (appellant's use of internet for information on "how to

---

[12] Ex. PSP-6.
[13] Ex. PSP-7; Ex. P-2 pp. 9-10.

6

commit suicide" and the fact that he called a suicide hotline was sufficient proof to establish that

he was a "clear and present danger" to himself). All that is required is a clear articulation of an

intent to commit suicide and an overt act taken to further that intention. 55 Pa.Code §

5100.84(g). In this case, Petitioner clearly articulated his intent to kill himself to his son and to

the examining physicians. He engaged in the following overt acts with regard to that intention.

He drank to excess, engaged in belligerent behavior, and demanded he be taken to get his "45's,"

asserting that he had a right to kill himself and cursed anyone who tried to stop him. He began to

compose an apparent suicide note, leaving his weapons to his wife. Finally, his firearms were

loaded and placed so as to be immediately accessible. This Court therefore found Petitioner's

challenge to the validity and appropriateness of his commitment to be without merit.

As a consequence of the mental health commitment, Petitioner is barred from possessing

a firearm. The Pennsylvania Uniform Firearms Act provides that certain persons "shall not use,

control, sell, transfer or manufacture or obtain a firearm in this Commonwealth." 18 Pa.C.S.

§ 6105(a)(1). This prohibition regarding firearms applies to the following:

> A person who has been adjudicated as an incompetent or who has
> been involuntarily committed to a mental institution for inpatient
> care and treatment under section 302, 303, or 304 of the provisions
> of the act of July 9, 1976 (P.L. 817, No. 143), known as the Mental
> Health Procedures Act. This paragraph shall not apply to any
> proceeding under section 302 of the Mental Health Procedures Act
> unless the examining physician has issued a certification that
> inpatient care was necessary or that the person was committable.

18 Pa.C.S.A. § 6105(c)(4).

Petitioner requested Restoration of Firearm Rights pursuant to 18 Pa.C.S. Section

6105(f)(1) which provides:

> **(f) Other exemptions and proceedings.--**
> (1) Upon application to the court of common pleas under this
> subsection by an applicant subject to the prohibitions under
> subsection (c)(4), the court may grant such relief as it deems

appropriate if the court determines that the applicant may possess a firearm without risk to the applicant or any other person.

The burden of proof is upon Petitioner to show that he is not a danger to himself or to others. See In re Keyes, 83 A.3d 1016 (Pa.Super.2013).

In attempting to prove that he did not pose a risk of harm to others, Petitioner sought to establish that the events alleged by his family to have occurred in May of 2013 did not, in fact, occur. His expert, Dr. Frank M. Dattilio, concluded that something occurred but that whatever that was, it was merely alcohol-induced. Neither argument was supported by adequate evidence.

Petitioner's evidence was inconsistent and unconvincing. Petitioner's testimony was in direct contradiction with the information his son and wife previously provided to authorities. Petitioner denied that he was depressed,[14] denied that his primary care physician prescribed medication for depression,[15] denied that he ever threatened to commit suicide,[16] denied that that he drank to excess on the date in question,[17] denied that he threatened his son,[18] denied that he pushed his wife,[19] denied that the open Word document on his computer regarding the disposition of his weapons was written in connection with his suicidal ideation,[20] denied that he saw a doctor on the day he was committed,[21] and denied that his written consent for inpatient treatment was executed voluntarily.[22] If Petitioner's account was to be believed, there would be no basis for his wife and son to call police, to leave the residence, and/or to have him committed. This Court did not believe that the allegations were a complete fabrication and, therefore,

---

[14] N.T. 29-30.
[15] Id.
[16] N.T. pp. 19, 38, 39, 47, 70-71.
[17] N.T. p. 9.
[18] N.T. p. 43.
[19] N.T. p. 65.
[20] N.T. pp. 90-91.
[21] N.T. p. 17.
[22] N.T. pp. 21-22.

8

determined that Petitioner's account of the events that led to his commitment were not credible. Petitioner's lack of credibility was also demonstrated by his vacillation as to the amount he drank, as to whether he has a drinking problem and as to whether he suffered from depression.

The report submitted by Petitioner's expert contained serious deficiencies and was, therefore, also unpersuasive. The report concludes that "[i]t appears that this case involved an incident in which Mr. Current consumed too much alcohol on a specific occasion which brought the worst out in him on May 19, 2013."[23] Petitioner's expert, while acknowledging that Steven Current's account of the events "indicates that substantially more occurred than what [Petitioner] conveyed to me during the clinical interview,"[24] does not explain what version of events he relied on in formulating his opinions. The expert appears to have discounted Steven Current's account of the events based on a statement attributed to him that many of the statements that were placed into the 302 petition were "blown out of proportion."[25] The expert's report does not indicate what statements he is referring to or who blew those statements out of proportion. The recitation of facts set forth in Steven Current's 302 commitment application are clear, concise, and not open to much interpretation. It is therefore difficult to discount the factual basis for the commitment. There is no indication that Steven Current recanted his account. In evaluating the events that occurred in May of 2013, Petitioner's expert also appears to disregard Petitioner's prior admissions to the physicians at Lower Bucks Hospital regarding his depression and suicidal ideation, once again without explanation.

The opinions and observations of Petitioner's expert were internally inconsistent. He concluded that Petitioner is "certainly committed to monitoring his mental health to address any

---

[23] Ex.P-2 p. 13.
[24] Id. p. 8.
[25] Id. p. 9.

9

potential symptoms of anxiety or depression that would surface in the future"[26] while at the same time noting,

> he tends to mask any depression or anxiety that he experiences for fear that it will be perceived by others as weakness and something undesirable....It is very important to him to attempt to maintain the appearance of adequacy and self-control. In this respect, he may tend to deny personal problems and maintain very little introspection or insight into his own behavior for fear of appearing inadequate....Hence, he has difficulty admitting to any psychological problems....[27]

The validity of his conclusion regarding Petitioner's commitment to monitor and to take steps to address any mental health issues is also questionable given Petitioner's history of self-diagnosis and refusal to obtain treatment. Upon his discharge from the involuntary commitment, Petitioner immediately and completely disregarded the discharge instructions given to him. He stopped his medication, failed to contact his case manager, and attended only one counseling session regarding his mental health.[28] Although he agreed to marriage counseling, no such counseling occurred. Although Petitioner has attended Alcoholics Anonymous meetings,[29] he quite clearly demonstrated during the course of his testimony that he does not believe that he has a drinking problem.[30] Finally, this Court could not accord weight to Petitioner's expert where Petitioner himself admitted that what he told the Court during the course of his testimony was not what he told his expert.[31]

Based upon the evidence presented and the lack of evidence presented, this Court could not find that Petitioner could "possess a firearm without risk to himself or any other person." He

---

[26] Id. p. 13.
[27] Id. p. 12.
[28] N.T. pp. 68-69.
[29] N.T. p. 24.
[30] N.T. pp. 6, 9, 11, 74-77.
[31] N.T. p. 62.

10

was diagnosed as suffering from depression and prescribed medication to treat that condition. When he stopped that medication, he became belligerent, violent, and attempted suicide. The witnesses whose eyewitness accounts formed the basis for Petitioner's commitment did not testify. There was no testimony from any uninterested eyewitness that the facts as alleged in the application for commitment were not true and correct. Petitioner was diagnosed by two mental health professionals as severely mentally disabled and in need of treatment and was directed to follow a treatment regimen that included medication and mental health counseling. This history, in conjunction with Petitioner's unwillingness or inability to acknowledge his mental health issues and his refusal to follow treatment recommendations or undergo any treatment, caused this Court to conclude that Petitioner has failed to establish that he no longer poses a risk of harm to himself or others.

For the reasons set forth above, this Court denied the Petitioners request to expunge the record of his involuntary mental health commitment pursuant to 18 Pa.C.S. Section 6111.1(g)(2) and his request to have his firearm rights restored pursuant to 18 Pa.C.S. Section 6105(f)(1).

BY THE COURT:

_7/21/15_
**Date**

DIANE E. GIBBONS, J.

11