J-S50024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: B.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: B.W. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 289 WDA 2019 |

Appeal from the Order Entered February 13, 2019
In the Court of Common Pleas of Blair County Civil Division at No(s):
2018 GN 2882

BEFORE:   LAZARUS, J., MURRAY, J., and COLINS, J.[*]

DISSENTING MEMORANDUM BY LAZARUS, J.:   **FILED NOVEMBER 1, 2019**

I respectfully dissent.  I believe the majority erred by finding an act in furtherance of a threat to commit harm a necessary condition, rather than a sufficient condition, for involuntary commitment under section 302 of the MHPA.  Even assuming, *arguendo*, such evidence is required, I believe the majority further erred by failing to afford B.W.'s treating physicians the deference due under **In re Vencil**, 152 A.3d 235 (Pa. 2017)—binding precedent, which, if properly applied, would require this Court to conclude B.W.'s involuntary commitment was supported by sufficient evidence.

B.W.'s sole issue on appeal implicates various subsections of the MHPA and the Pennsylvania Uniform Firearms Act (UFA), which I briefly summarize

_____

[*] Retired Senior Judge assigned to the Superior Court.

herein.  The MHPA serves the dual purposes of assuring that "those who are severely mentally disabled will be provided with the medical care they need, for their own health and safety[,]" while simultaneously providing a mechanism "to protect the welfare of others from the mentally ill." ***In re R.F.***, 914 A.2d 907, 914 (Pa. Super. 2006).  To facilitate these goals, section 302 of the MHPA provides the legal process by which physicians may involuntarily commit an individual for up to 120 hours upon finding "reasonable grounds to believe" he or she is "severely disabled and in need of immediate treatment." 50 P.S. § 7302(a).

Involuntary commitment is only permitted under circumstances where the treating physician finds the individual in question "severely mentally disabled within the meaning of section 301(b)" and "in need of medical treatment." 50 P.S. § 7302(b).  To classify an individual as "severely mentally disabled" under section 301(b), a physician must find the individual presents "a clear and present danger of harm to others or to himself," which "**may** be demonstrated by proof that the person has made threats of harm and has committed acts in furtherance of the threat to commit harm."  50 P.S. § 7301 (a)–(b) (emphasis added).

Involuntary commitment under section 302 precludes an individual from possessing a firearm or a license to carry a firearm.  ***See*** 18 Pa.C.S.A. § 6105(c)(4) (prohibiting any "person who has been . . . involuntarily committed to a mental institution for inpatient care and treatment under section 302"

from possessing firearms). Section 6111.1(g)(2) of the UFA provides a mechanism for individuals who have been involuntarily committed under section 302 to have the record of their commitment expunged,[1] stating as follows:

> A person who is involuntarily committed pursuant to section 302 of the [MHPA] may petition the court to review the sufficiency of the evidence upon which the commitment was based. If the court determines that the evidence upon which the involuntary commitment was based was insufficient, the court shall order that the record of the commitment submitted to the Pennsylvania State Police be expunged.

18 Pa.C.S.A. 6111.1(g)(2). If an individual is prohibited from possessing a firearm because of a prior involuntary commitment under section 302, expungement under section 6111.1(g)(2) restores that right. *Vencil*, *supra* at 246 n.10 (listing expungement of 302 commitment as, *inter alia*, a "mechanism to . . . obtain reinstatement of . . . firearms rights.").

Ordinarily, we evaluate the denial of a motion for expungement under an abuse of discretion standard. *Commonwealth v. Smerconish*, 112 A.3d 1260, 1263 (Pa. Super. 2015) ("Our well-settled standard of review in cases

---

[1] We note firearms rights may be restored without expungement if the individual applies for, and the court grants, relief under 18 Pa.C.S.A. 6105(f)(1). *See* 18 Pa.C.S.A. 6105(f)(1) (permitting such relief as the court deems appropriate "if the court determines that the applicant may possess a firearm without risk to the applicant or any other person."); *see also In re Vencil*, *supra* at 246 n.10 (listing section 6105(f)(1) as alternative to seek restoration of firearms right, independent of expungement). In the instant appeal, B.W. seeks restoration of his firearms rights solely by means of expungement under section 6111.1. *See* Brief of Appellant, at 12.

involving a motion for [expungement] is whether the trial court abused its discretion.") However, where a petitioner seeks expungement of his or her involuntary commitment under section 302 pursuant to 18 Pa.C.S.A. § 6111.1(g)(2), the statutory scheme summarized above presents a pure question of law, requiring *de novo* review. **See Vencil**, **supra** at 237.

Our Supreme Court explicated the standard of review for such petitions as follows:

> [U]nder section 6111.1(g)(2), a challenge to the sufficiency of the evidence to support a 302 commitment presents a pure question of law, and the court's sole concern is whether, based on the findings recorded by the physician and the information he or she relied upon in arriving at those findings, the precise, legislatively-defined prerequisites for a 302 commitment have been satisfied and are supported by a preponderance of the evidence. We emphasize that the trial court's review is limited to the findings recorded by the physician and the information he or she relied upon in arriving at those findings, and requires deference to the physician, as the original factfinder, as the physician examined and evaluated the individual in the first instance, was able to observe his or her demeanor, and has particularized training, knowledge and experience regarding whether a 302 commitment is medically necessary.

*Id*.

As with traditional sufficiency challenges, a challenge to the sufficiency of the evidence underpinning a commitment pursuant to section 302 requires courts to view "the facts of record in the light most favorable to the original decision-maker . . . to determine whether the requisite standard of proof has been met." *Id.* at 243. The substantial deference owed by a reviewing court to treating physicians stems from their "specialized training or knowledge that

- 4 -

makes them uniquely qualified to reach the findings and conclusions the General Assembly entrusted them to make." **Id.** Therefore, I review, in the light most favorable to the treating physician, "the physician's findings, made at the time of the commitment, to determine whether the evidence known by the physician at the time, as contained in the contemporaneously-created record, supports the conclusion that the individual required commitment under one or more of the specific statutorily defined circumstances." **Id.** at 233; **see also id.** ("Section 6111.1(g)(2) does not . . . authorize a trial court to 'redecide the case,' operating as a 'substitute' for the physician who originally decided the 302 commitment was medically necessary.") (quoting with disfavor **In re Vencil**, 120 A.3d 1028, 1036 (Pa. Super. 2015)[2]).

Instantly, I agree with the learned majority as to which facts are pertinent to the matter at hand. **See** Majority Memorandum at 1–3. Specifically, the majority quotes the following three treating physicians: (1) Terry Ruhl, M.D., who diagnosed B.W.; (2) Joseph Sumereau, D.O., who petitioned for B.W.'s commitment; and (3) and Mercedes Boggs, M.D., who involuntarily committed B.W. pursuant to section 302. **Id.** at 2–3. Their reports, respectively, state as follows:

---

[2] This citation from **In re Vencil**, 152 A.3d 235 (Pa. 2017) references our Supreme Court quoting this Court's decision with disfavor. All citations to **Vencil** in this dissenting memorandum using the short citation **supra** refer to the Supreme Court opinion, not the overruled Superior Court decision.

[Dr. Ruhl stated]  Anxiety and anger feelings.  Making credible threats of violence against a co-worker but is here for help. Girlfriend has concerns for his safety.

Crisis here now—expect they will recommend inpatient treatment, involuntary if necessary.  UPMC police here for safety, but he has made no threats against staff.

. . .

[Dr. Sumereau stated]  I, Dr. Sumereau, was present while patient stated that he would strangle another person to death.  He then gave the name of the intended victim.  Patient stated that he was not sure when or where he would perform this act, but he would do it next time he saw the person.

. . .

[Dr. Boggs stated]  [B.W.] is homicidal towards his coworker and admits to stating that he would strangle him.  [B.W.] is very angry and agitated, danger to others.  Not receptive to voluntary admission.

*Id.*  (quoting Appellant's Exhibit 1, at 1, and Appellee's Exhibit 1, at 3, 7).

My analysis of B.W.'s claim, however, diverges from the majority in two key respects:  (1) I find proof of "acts in furtherance of [a] threat to commit harm" to be a sufficient condition, rather than a necessary one, for supporting a physician's decision to involuntarily commit an individual under section 302; and (2) I believe, viewed in the light most favorable to the treating physicians, the evidence underpinning the decision to commit B.W. rests on sufficient evidence, as B.W.'s threats, which contained both a target and method for committing homicide, constitute acts in furtherance of a plan to harm another under the MHPA.

The majority's decision hinges on the conclusion that B.W. "did not 'commit an act in furtherance of the threat to commit harm,' as prescribed in 50 P.S. 7301(b)." Majority Memorandum, at 9. This conclusion rests on a misreading of section 301(b)(1), which states, in relevant part, "[f]or the purpose of this section, a clear and present danger of harm to others **may** be demonstrated by proof that the person has made threats of harm and has committed acts in furtherance of the threat to commit harm." 50 P.S. 7301(b) (emphasis added).

Regarding the necessity of "acts in furtherance" under section 301, this Court has previously stated as follows:

> We emphasize that the [MHPA] does not require "threats of harm" and commission of "acts in furtherance of the threat to commit harm" as a condition precedent for finding "clear and present danger." Rather, the [MHPA] specifies that the "threats and acts" formula **may, not must**, be used to demonstrate dangerousness. Since the statutory language does not dictate that a petitioner use only "threats and acts" to show "clear and present danger," we conclude that other means can also be used.

***Commonwealth v. Helms***, 506 A.2d 1384, 1388 (Pa. Super. 1986) (emphasis added). Consequently, I believe the majority erred by holding acts in furtherance of a threat to commit harm to be a necessary condition for finding the underlying involuntary commitment supported by sufficient evidence.

Even assuming, *arguendo*, such evidence is required under section 302, I believe B.W.'s statements to his treating physicians, viewed in the light most

favorable to those physicians, constitute an "act in furtherance," thus rendering B.W.'s commitment supported by sufficient evidence.

Properly interpreting the phrases "in the light most favorable" and "acts in furtherance" is essential to the resolution of B.W.'s appeal. "In the light most favorable" is a term of art with a precise meaning. **See Vencil**, **supra** at 242. When reviewing the evidence "in the light most favorable to the physician as the original decision-maker[,]" **id.** at 237, we are required to afford those physicians "the benefit of all reasonable inferences to be drawn from the evidence" as a matter of law. **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000). Likewise, under the MHPA, the phrase "acts in furtherance" refers to a sufficient condition for finding an individual to be "a clear and present danger of harm to others[.]" **See** 50 P.S. 7301(b)(1); **see also Helms**, **supra** at 1388.

This Court has issued several opinions outlining the contours of an "act in furtherance" under the MHPA, both in terms of threats to others and threats to the self, including: (1) picking up a cane and verbally threatening the staff of a boarding home, **see In re R.D.**, 739 A.2d 548, 558 (Pa. Super. 1999); (2) stating "[I] might as well get a scope and a rifle and get rid of the problem, my soon-to-be-ex wife" before purchasing a rifle scope, **see In re Woodside**, 699 A.2d 1293, 1297 (Pa. Super. 1997); and (3) searching the internet for information on how to commit suicide, **see In re R.F.**, 914 A.2d 907, 914 (Pa. Super. 2006); **see also Smerconish**, **supra** at 1264 ("His online research

seeking painless methods of committing suicide constituted an act in furtherance of the threat to commit harm."). These opinions are tied together by a common thread—in each, this Court found an individual to have committed an act in furtherance of a threat by either identifying his or her chosen means to harm a life or searching for means to do so. *See R.D.*, *supra* at 558; *Woodside*, *supra* at 1297; *R.F.*, *supra* at 914; and *Smerconish*, *supra* at 1264.

Here, B.W. told two of the three physicians involved in his commitment that he identified a co-worker as his target and had chosen strangulation as the means by which he intended to kill that target. *See* Majority Memorandum at 2–3. Those physicians found B.W.'s threats credible. *Id.* I see no reason to find the evidence insufficient merely because B.W. promised to make good on his threats with his hands as opposed to a cane or a scoped rifle. *See R.D.*, *supra* at 558; *see also Woodside*, *supra* at 1297. Moreover, I find nothing in the MHPA to warrant such divergent outcomes between section 7301(b)(1) and section 7301(b)(2), such that searching for a method of suicide constitutes an act in furtherance, while settling on a target and method for homicide fails to qualify as such. 50 P.S. 7301; *see R.F.*, *supra* at 914; *see also Smerconish*, *supra* at 1264. Therefore, I believe these statements, in and of themselves, constitute an act in furtherance of a threat

to commit harm under both section 301 and binding precedent.[3] **R.D.**, **supra** at 558; **Woodside**, **supra** at 1297; **R.F.**, **supra** at 914; and **Smerconish**, **supra** at 1264.

I therefore conclude "the evidence known by the physician[s] at the time, as contained in the contemporaneously-created record, supports the conclusion that [B.W.] required commitment." **Vencil**, **supra** at 233. To hold otherwise is to impermissibly "re[-]decide the case, operating as a substitute for the physician who originally decided the 302 commitment was medically necessary." **See id.** at 233 (quotation omitted).

Consequently, I respectfully dissent.

_____

[3] I find unpersuasive the majority's reliance on **Interest of K.M.**, 1677 MDA 2018 (Pa. Super. July 17, 2019) (unpublished memorandum). Majority Memorandum, at 10–12. Not only is **K.M.** non-precedential, it is premised on the assumption that an act in furtherance is a necessary condition for commitment under section 302. **Compare K.M.**, **supra** at 8 (emphasis added) ("[T]o find that an individual presents a clear and present danger either to himself or others, the evidence **must** demonstrate that the individual's threats to commit harm were accompanied by an act in furtherance of the threat to commit harm.") **with** 50 P.S. § 7301(b) (emphasis added) ("For the purpose of this section, a clear and present danger of harm to others **may** be demonstrated by proof that the person has made threats of harm and has committed acts in furtherance of the threat to commit harm."). Furthermore, the Court's decision in **K.M.** does not appear to afford the treating physicians the deferential review required by **Vencil**. **See K.M.**, **supra** at 9 (making no mention in legal analysis of viewing evidence available prior to commitment in the light most favorable to treating physicians). Lastly, **K.M.** is factually distinguishable from the instant appeal; whereas B.W. concretely identified both a means to kill and a target, K.M appears to only have vaguely expressed suicidal ideations. **See id**. ("The record reveals only that [K.M.] at most made certain statements at the clinic that led the clinic's staff to believe he was harboring suicidal ideations.").