[J-94-2020] [MO: Mundy, J.]
IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT

IN RE: B.W.

APPEAL OF: BLAIR COUNTY
DEPARTMENT OF HUMAN SERVICES

: No. 14 WAP 2020
:
:
: Appeal from the Order of the
: Superior Court entered November 1,
: 2019 at No. 289 WDA 2019,
: reversing the Order of the Court of
: Common Pleas of Blair County
: entered February 13, 2019 at No.
: 2018 GN 2882, and remanding.
:
:
: ARGUED: October 22, 2020

## CONCURRING AND DISSENTING OPINION

**JUSTICE TODD**                                           **DECIDED: MAY 18, 2021**

In construing the sufficiency of proofs under Section 301(b)(1) of the Mental Health Procedures Act supporting a commitment under Section 302 – that "the person has made threats of harm and has committed acts in furtherance of the threat to commit harm," 50 P.S. § 7301(b)(1) – I agree with the majority that, in addition to proof of a threat to commit harm, proof of an act committed in furtherance of that threat is also required. Thus, I join that portion of the Majority Opinion. *See* Majority Opinion at 14-18. However, I disagree that there was sufficient proof that such an act was committed here. Accordingly, on that point, I dissent.

To medical professionals, B.W. threatened to kill his coworker, adding that he would strangle the coworker the next time he saw him. Obviously, these words constituted a threat to commit harm. Apart from uttering these words, albeit with their implication that B.W. had, to some degree, *mentally* planned the killing, no evidence was offered that B.W. took any action related to this threat. Nonetheless, the majority

concludes that B.W.'s "articulation of a specific plan to harm an identified target" was sufficient to prove he committed acts in furtherance of his threat. Majority Opinion at 19. I cannot agree.

As the majority concludes, a Section 302 commitment of the type at issue in this case requires proof of both a threat and an act in furtherance of that threat. This formulation is used three times in Section 301, the first of which is implicated here. *See* 50 P.S. § 7301(b)(1) ("the person has made threats of harm and has committed acts in furtherance of the threat to commit harm"); *id.* § 7301(b)(2)(ii) ("the person has made threats to commit suicide and has committed acts which are in furtherance of the threat to commit suicide"); *id.* § 7301(b)(2)(iii) ("the person has made threats to commit mutilation and has committed acts which are in furtherance of the threat to commit mutilation"). In each case, the threat – of harm to others / to commit suicide / to mutilate oneself – must be accompanied by the commitment of acts in furtherance of that threat.

Given this language, I am unable to conclude that the expression of thoughts to medical professionals proves a threat *and* that those self-same expressions constitute "acts in furtherance of" the threat. In my view, the legislature's use of the phrase "committed acts in furtherance of the threat" requires some action beyond the expression of the threat itself. Indeed, critically, the committed acts must be "in furtherance of" the threat.

"Furtherance" is defined as "[t]he fact of being helped forward," "the action of helping forward," or "advancement, aid, assistance." The New Shorter Oxford English Dictionary 1046 (4th ed. 1993). Thus, acts committed "in furtherance of" a threat must advance the threat, help move it forward. In my opinion, this qualifying language requires an individual to advance the threat via action beyond the threatening expression itself, something akin to an "overt act". *See* Black's Law Dictionary (11th ed. 2019) (defining

"overt act" as "[a]n outward, physical manifestation of the will"). Indeed, while the majority eschews the conclusion that Section 301(b) requires an overt act, *see* Majority Opinion at 21, it overlooks caselaw from this Court and the Superior Court holding precisely that.

In *Com. ex rel. Gibson v. DiGiacinto*, 439 A.2d 105 (Pa. 1981), we addressed a challenge to an involuntary commitment under Section 304. After quoting the three clear-and-present-danger formulations of Section 301(b) discussed above,[1] we held that "if appellant is to be found a clear and present danger to himself or others, it is necessary to show *an overt act* involving attempted suicide or self-mutilation or the infliction or threat of serious bodily harm to others to support the finding. *In the absence of such an overt act*, actions indicating inability to satisfy his own need for nourishment, personal or medical care, shelter, or self-protection and safety [under Section 301(b)(2)] must be shown." *Id.* at 107 (emphasis added). The Superior Court has held likewise. *See In re S.B.*, 777 A.2d 454, 457–59 (Pa. Super. 2000) (in contrast to commitment under Section 301(b)(1), finding no "overt act" required for unable-to-care-for-oneself commitment under Section 301(b)(2)); *Com. v. Jackson*, 62 A.3d 433, 440 (Pa. Super. 2013) (in case challenging sufficiency of Section 302 warrant, necessity of "overt act" in further of threat satisfied by appellant removing baton and smashing car window, as well as kicking dashboard, thrusting seat back, and turning off car in traffic); *In re Woodside*, 699 A.2d 1293, 1297 (Pa. Super. 1997) (although trial court did not make factual finding regarding timing of appellant's purchase of rifle scope, finding appellant's habit of carrying and displaying guns in the presence of wife constituted sufficient overt act in furtherance of the threat to shoot her); *In re S.C.*, 421 A.2d 853, 857 (Pa. Super. 1980) (discussing necessity of "overt act" under Section 301(b)-based commitments).

---

[1] Like Section 302, a commitment under Section 304 is based on the definitions of persons in need of treatment in Section 301.

Indeed, except for *Appeal of H.D.*, 698 A.2d 90 (Pa. Super. 1997), which I discuss below, the cases the majority relies on for its conclusion that the expression of mental planning is sufficient manifestly involve overt acts, acts taken in addition to the making of a threat. *See In re R.F.*, 914 A.2d 907 (Pa. Super. 2006) (searching internet for information on "How to commit suicide," and calling a suicide hotline for information on the topic); *Commonwealth v. Smerconish*, 112 A.3d 1260 (Pa. Super. 2015) (sending 12 instant messages to sister threatening suicide).

Further, the majority's reliance on *Appeal of H.D.* is misplaced. Critically, that case principally addressed challenges to Section 303 commitments for alleged breaches of technical, procedural requirements of the Mental Health Procedures Act.[2] *See id.* (alleging, *inter alia*, county failed to timely serve necessary Section 303 certification, and that certification was defective). Perhaps as a result, the underlying facts leading to the commitments were not discussed. Nevertheless, the majority finds support in a two-sentence footnote, which states in *toto*:

> H.D. also alleges that her initial commitment under § 302 was improper because her statements to emergency personnel about hearing sounds in her head and planning to jump off a bridge were merely suicidal "ideas" and did not establish suicidal intent. After a thorough review of the record, we refuse to second-guess the conclusion of the emergency medical and mental health professionals that H.D. presented a clear and present danger of harm to herself.

*Appeal of H.D.*, 698 A.2d at 94 n.4. Notably, contrary to the majority's suggestions[3], the court in *Appeal of H.D.* does not cite, quote, or discuss the language of Section 301(b) at

---

[2] Two unrelated challenges were consolidated.

[3] *See* Majority Opinion at 19 (discussing *Appeal of H.D.* in support of contention that "a person who has developed a complete plan, or taken steps to develop a plan, to commit suicide 'has committed acts which are in furtherance of the threat to commit suicide[.]'"); *id.* at 20 (stating that, in *Appeal of H.D.*, "the court held a plan to jump off a bridge was an act in furtherance").

issue in the instant case. Moreover, in the portion of the opinion quoted above, the court merely addressed the appellant's charge therein that her "suicidal intent" was not established, a term which is not found in Section 301, nor consonant with "committing acts in furtherance." Given this brief, misdirected analysis, in my opinion, *Appeal of H.D.* is not helpful, and certainly not persuasive, in answering the question before us.

In short, whether it would be good public policy to allow the commitment of individuals who verbalize threats of harm to medical professionals, without more, is not this Court's place to say. Regardless, the legislature has unmistakably required more: before commitment is permitted, the legislature has required those individuals who have uttered threats also *to act*, to some degree, to advance those threats. While it is clear that B.W., in front of medical professionals, threatened his coworker, stating roughly what he planned, no evidence was offered that he took any action apart from uttering these expressions of his mental state. Accordingly, I conclude his commitment under Section 302 was infirm.[4] On that basis, I dissent.

Justice Saylor joins this concurring and dissenting opinion.

---

[4] I also reject the majority's suggestion that the physicians' assessment of B.W.'s credibility affects our sufficiency analysis, *see* Majority Opinion at 21 ("Significantly, the three physicians who treated B.W. found his threats credible and determined he was in need of immediate treatment."), or that we defer to such assessments for purposes of that sufficiency analysis, *see id.* As the majority otherwise recognizes, *see id.* at 10, the sufficiency question before us is a question of law. *See In re Vencil*, 152 A.3d 235, 246 (Pa. 2017). Presuming the physicians found B.W. credible, the evidence was nonetheless insufficient, for the reasons I have discussed.