**In re Steven E. HANCOCK, Appellant.**

**Appeal of CENTRE COUNTY MENTAL HEALTH/MENTAL RETARDATION.**

Superior Court of Pennsylvania.

Submitted Aug. 10, 1998.
Filed Oct. 9, 1998.

---

David Crowley, Bellefonte, for appellant.

Daniel McGee, State College, for Centre County Mental Health/Mental Retardation, participating party.

Before CAVANAUGH, J., CERCONE, President Judge Emeritus, and OLSZEWSKI, J.

OLSZEWSKI, Judge:

This is an appeal taken from the civil commitment to involuntary psychiatric treatment entered on March 6, 1998, and the order denying post-trial motions entered on March 10, 1998. We reverse, remand, and relinquish jurisdiction for further proceedings in light of this decision.

On March 3, 1998, Steven Hancock was admitted to The Meadows Psychiatric Center in Centre Hall, Pennsylvania, for involuntary emergency examination and treatment pursuant to Mental Health Procedures Act ("MHPA") § 302, 50 P.S. § 7302. Two days later, appellant's parents, Emilie and Ronald Hancock, filed a petition for involuntary treatment pursuant to MHPA § 303. A hearing pursuant to MHPA § 303 was held before Mental Health Review Officer Charles J. Kroboth, Esq. at The Meadows Psychiatric Center on March 6, 1998. As a result of the March 6th hearing, appellant was certified for extended involuntary emergency treatment for a period not to exceed twenty days. Appellant filed a Petition for Review of Certification for Extended Involuntary Treatment. Judge Charles C. Brown, Jr. denied the petition on March 10, 1998. This appeal challenges the validity of the March 6thcertification and the March 10th denial of the petition for review.

Appellant puts forth two questions for review before this Court:

1. Whether the Mental Health Review Officers erred in allowing The Meadows Psychiatric Hospital to establish

that the appellant was severely mentally disabled with a preponderance of the evidence rather than clear and convincing evidence such that the commitment order must be vacated and that all records must be expunged? [sic]

2. Whether the evidence was insufficient to sustain a finding that Mr. Hancock was a clear and present danger to himself since the record does not support such a finding? [sic]

Appellant's brief at 4. For the reasons stated below, we hold that the appropriate standard of proof for an emergency involuntary treatment hearing pursuant to MHPA § 303 is clear and convincing evidence. Thus, we reverse the March 10th order denying appellant's Petition for Review of Certification for Extended Treatment, remand and relinquish jurisdiction for further proceedings in light of our findings.

We are asked to review the application of MHPA § 303, 50 P.S. § 7303, the statute setting forth the framework for extended involuntary emergency treatment. The system for involuntarily treating an individual for mental illness is complex. The first stage, pursuant to MHPA § 302, allows for the involuntary examination and treatment of an individual for up to 120 hours. 50 P.S. § 7302. Once it is believed that confinement should extend beyond 120 hours, a facility can apply for a certification for extended involuntary emergency treatment for up to twenty days pursuant to MHPA § 303. If it appears that the individual needs treatment extending beyond twenty days, a person/facility may petition the court to order involuntary treatment up to ninety days (or one year in cases stemming from criminal charges) based on clear and convincing evidence that the individual poses a clear and present danger to himself or others. 50 P.S. §§ 7301, 7304.

Against this statutory backdrop, we are asked to consider the issue of the appropriateness of a preponderance of the evidence standard of proof under MHPA § 303. First, we turn to the language of the statute for guidance. MHPA § 301 discusses the *nature* of the evidence needed in order to commit someone by establishing that the act applies only to "severely mentally disabled" persons who are defined as those "posing a clear and present danger of harm to others or himself." 50 P.S. § 7301. While the § 301 definition applies throughout the act, the legislature did not establish a universal standard of proof necessary to meet the criteria in § 301. Instead, the legislature addressed the standard of proof issue in the specific procedural portions of the act. The legislature allows for the confinement of an individual where there are "reasonable grounds to believe a person is severely mentally disabled and in need of immediate treatment." 50 P.S. § 7302. MHPA § 304 specifically establishes the standard of proof for court orders committing an individual for involuntary treatment of up to ninety days as "clear and convincing evidence." 50 P.S. § 7304(f). The case before us addresses the absence of a legislated standard of proof in extended involuntary emergency treatment cases under MHPA § 303.

■ Consideration of cases addressing omissions in legislative drafting requires the most critical and sensitive judicial analysis. It is not the role of the courts to "add provisions which the legislature has omitted unless the phrase is necessary to the construction of the statute." *Commonwealth v. Berryman*, 437 Pa.Super. 258, 649 A.2d 961, 965 (Pa.Super.1994), *appeal denied*, 541 Pa. 632, 663 A.2d 685 (1995). Thus, in cases such as the one before this Court, a court might prefer to refrain from rendering a decision on the merits, choosing instead to leave such matters to the legislature.

■ Sometimes, however, situations arise that require this Court to address the practical ramifications of the application of the law as written and establish a clearly defined uniform rule in the absence of clarity by the legislature. *See id.* After all, "[w]e are to presume that the legislature did not intend a result that is absurd or unreasonable." *Id.* at 966. Allowing the courts to continue to apply an unclear and unworkable standard of proof in the certification of extended involuntary emergency treatment would allow potentially absurd or unreasonable results to occur. Thus, while this Court recommends that the legislature consider re-

vising the language in MHPA § 303 in order to best clarify and effectuate its intent by specifying an appropriate standard of proof, we feel that we cannot wait for future legislative action. It is clear that the MHPA "squarely places responsibility for its administration in the courts." *Commonwealth v. Helms*, 352 Pa.Super. 65, 506 A.2d 1384, 1386 (Pa.Super.1986). Continued effective administration of this statute demands that we set forth an appropriate standard of proof in § 303 hearings immediately.[1]

■ At the heart of the case before us is the system of judicially and statutorily created standards of proof in civil cases.[2] Most civil cases are decided based on a preponderance of the evidence standard of proof. This preponderance of the evidence standard results in decisions in favor of the litigant who can better prove his case, leaving the risk of error shared almost equally by the parties. *Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). Since most civil cases merely seek monetary damages, liberty and due process considerations are not as great as in cases where fundamental freedoms are at stake. Over the course of time, the clear and convincing evidence standard of proof developed in civil cases. First used primarily in "quasi-criminal" cases, this standard addresses increasing due process concerns in cases where the potential deprivation of liberty is heightened in the civil sphere, such as cases resulting in deportation and denaturalization. *Id.* at 424 (citations omitted). Over time, courts in this state adopted the clear and convincing evidence standard in civil suits, including proof of fraud cases, *see,* *e.g., Laughlin v. McConnel*, 201 Pa.Super. 180, 191 A.2d 921 (Pa.Super.1963), and cases involving the presumption of legitimacy of children born in wedlock. *See, e.g., Re Mays' Estate*, 141 Pa.Super. 479, 15 A.2d 569 (Pa.Super.1940).[3]

Deciding to commit a person involuntarily for any duration represents a serious deprivation of an individual's · liberty. *In re S.L.W.*, 698 A.2d 90 (Pa.Super.1997), *appeal denied,* 717 A.2d 1029, 1998 Pa. LEXIS 118 (1998). Involuntary commitment of an individual pursuant to MHPA § 303 results in the confinement and forced treatment of an individual for up to twenty days. The implications stemming from the commitment last long beyond the initial twenty-day confinement. A decision to certify an individual for extended involuntary treatment pursuant to MHPA § 303 can serve as a basis for pursuing involuntary treatment for a longer duration under MHPA § 304. 50 P.S. § 7304. As appellant points out, persons who are involuntarily committed pursuant to § 7303 cannot legally possess a firearm. 18 Pa. C.S.A. § 6105(c)(4). Based on 18 Pa.C.S.A. § 6105(c)(4) and pursuant to MHPA § 109(d), the mental health review officer or judge assigned to the case is obligated to report the identity of any individual involuntarily committed pursuant to provisions of the MHPA to the Pennsylvania State Police.

■ Because of the seriousness of the liberty interest at stake—the decision to hold an individual for mandatory mental health treatment without their consent—we must do everything within our power to ensure that due process protections are met. *Cf. In re Hutchinson*, 500 Pa. 152, 454 A.2d 1008 (Pa.

---

**1.** It should also be noted that neither Mr. Hancock nor Centre County Mental Health/Mental Retardation ("Centre Co. MH/MR") recommends the maintenance of the lack-of-a-standard status quo. Therefore, the question posed for our review is not whether there should be a recognizable, defined standard of proof under MHPA § 303, but rather whether the appropriate standard is a preponderance of the evidence or clear and convincing evidence.

**2.** An examination and analysis of the beyond a reasonable doubt standard is outside the scope of this decision. Neither appellant nor Centre Co. MH/MR proposes the use of beyond a reasonable doubt standard as the standard of proof under

the state or federal constitutions. As set forth in *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), the federal constitution does not require use of the beyond a reasonable doubt standard of proof in involuntary civil commitment cases. *Id.* Further, we do not believe that the state constitution or case law suggests the use of the beyond a reasonable doubt standard in civil commitment cases in Pennsylvania.

**3.** For a thorough examination of the use and development of the clear and convincing evidence standard in state courts, see, e.g., Justice Bill Vance, *The Clear and Convincing Evidence Standard in Texas: A Critique,* 48 Baylor L.Rev. 391 (1996).

1982) ("It is well settled that involuntary civil commitment ... constitutes deprivation of liberty and may be accomplished only in accordance with due process protections."). Central to the concept of due process is the concept of fairness and uniformity in the law. The present case demonstrates the confusion and opportunity for inconsistent application of the law that exists in the absence of a clearly definable standard of proof. In holding that the appropriate standard of proof for certification of extended involuntary treatment is clear and convincing evidence, this Court provides a definitive and recognizable standard for judges and mental health review officers to follow in subsequent cases.

Centre Co. MH/MR's argument that the legislature intended the system for involuntarily committing an individual for mental health examinations and treatment to be a system of progressive procedural protections is compelling and correct. *In re Ann S.*, 279 Pa.Super. 618, 421 A.2d 370 (Pa.Super.1980). At the same time, it is clear that the legislature intended the progressive nature of the procedural protections to reflect the extent of the deprivation of liberty at stake.

■ Establishing a standard of proof for the certification of an individual for involuntarily treatment for mental illness represents the foundation of due process concepts and principles. "In cases involving individual rights, whether criminal or civil, '[t]he standard of proof [at a minimum] reflects the value society places on individual liberty.' " *Addington*, 441 U.S. at 425, 99 S.Ct. 1804 (quoting Tippett v. Maryland, 436 F.2d 1153, 1166 (4th Cir.1971)). After weighing due process considerations in *Addington*, the Supreme Court held clear and convincing evidence to be the appropriate and constitutional standard of proof in cases concerning longer-term involuntary commitment. *Id.* at 431–32. The Court based its decision on the "significant deprivation of liberty" at stake, the "adverse social consequences ... [which have] a very significant impact on the individual," and "the possible risk that a factfinder might decide to commit an individual based solely on a few isolated instances of unusual conduct." *Id.* at 425–27.

As Centre Co. MH/MR points out, the Supreme Court's decision in *Addington* was based on a statute for longer-term involuntary commitment, similar to MHPA § 304. Centre Co. MH/MR argues that an involuntary confinement and treatment for twenty days, pursuant to MHPA § 303, represents a significantly lesser deprivation of liberty than that presented before the *Addington* Court. In reviewing the factors discussed in *Addington*, however, we are compelled to follow the basic mandate of the Supreme Court. We are faced with setting the standard of proof for hearings concerning the certification for involuntary extended treatment for twenty days. Confinement for twenty days, as a civil commitment for any length of time, constitutes a "significant deprivation of liberty." *Addington*, 441 U.S. at 425, 99 S.Ct. 1804; *see In re S.L.W.*, 698 A.2d at 92. Being confined for mental health treatment, even for *only* twenty days, produces a stigma that the individual must carry for the remainder of his life. Most importantly, as noted by this state's Supreme Court, "a person who is mistakenly committed to a mental institution might suffer serious psychological damage" as a result of the confinement. *Commonwealth v. Hubert*, 494 Pa. 148, 430 A.2d 1160, 1162–63 (Pa.1981).

■ In the relaxed setting of an informal conference pursuant to MHPA § 303, there remains a serious likelihood that a fact finder may be blinded by a set of isolated incidents. The result would be not only disappointing, but also tragic and in direct contravention of the legislative purpose of the MHPA. While due process considerations and the legislative policy of the MHPA could result in a person who *may* be mentally ill being released, the statute only allows for the involuntary commitment of persons who *are*, in fact, mentally ill. "Loss of liberty calls for a showing that the individual suffers from something more serious than is demonstrated by [mere] idiosyncratic behavior." *Addington*, 441 U.S. at 427, 99 S.Ct. 1804. A preponderance of the evidence standard could allow an unusual, odd, or different individual to be subject to involuntary mental health treatment because just more than half of the evidence tends to show that the individual presents a "clear and present danger to himself or others." 50

P.S. § 7301. Placing such risks of judicial error on the shoulders of the individual involuntarily committed is simply unacceptable.

Clear and convincing evidence, on the other hand, addresses the factors and risks before this Court. Requiring clear and convincing evidence that an individual represents a clear and present danger to himself or others places the burden squarely on the facility or individual attempting to commit the individual involuntarily. The risk of erroneously committing an individual who is not, in fact, mentally ill is greatly reduced and the chances of erroneously damaging an individual's reputation and potentially causing psychological damages are negligible. At the same time, the application of the clear and convincing evidence standard further carries out the legislative purpose of the MHPA by ensuring that only those persons who *are* mentally ill are involuntarily committed for treatment. Finally, and perhaps most importantly, use of this intermediate standard of proof acts as a due process check in an otherwise intentionally informal conference to determine an individual's mental health. Placing such a check in the system will help balance the need to provide mental health treatment against the individual's rights by providing necessary treatment for persons who are mentally ill while sparing persons whose mental health is merely the subject of curiosity and inquiry. *See In re Hutchinson*, 454 A.2d at 1010–11.

In making this decision, we take into consideration the weighty interests of the state to ensure that mentally ill persons receive the treatment they desperately need pursuant to the MHPA. When balancing the needs of the state in protecting mentally ill persons and others in society against the liberty interests of the individual sought to be committed, we find that due process protections demand the application of the clear and convincing evidence standard of proof in cases pursuant to MHPA § 303.

Finally, we find no merit in Centre County MH/MR's contention that the misapplication of the standard of proof in the present case represents harmless error. It is for the fact finder to determine whether the evidence supports a finding by clear and convincing evidence that appellant posed a clear and present danger of harm to others or himself. 50 P.S. § 7301(a). Thus, we remand this case for further proceedings to determine whether upon a finding of clear and convincing evidence appellant posed a clear and present danger of harm to others or himself.

Order reversed. Case remanded for further proceedings pursuant to MHPA § 303 and consistent with this decision. Jurisdiction relinquished.