J-A34045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: D.C.W. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.C.W. | |
| | No. 1218 MDA 2015 |

Appeal from the Order Entered June 12, 2015
In the Court of Common Pleas of Centre County
Civil Division at No(s): 2015-1994

BEFORE:  PANELLA, J., OTT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED JANUARY 06, 2016**

Appellant D.C.W. appeals from the order entered in the Centre County Court of Common Pleas, which denied his petition for review of certification to involuntary inpatient mental health treatment.  We affirm.

The relevant facts and procedural history of this appeal are as follows. On June 2, 2015, the Office of Mental Health and Intellectual Disabilities of Centre County filed a petition seeking extended involuntary treatment of Appellant pursuant to Section 7304 of the Mental Health Procedures Act ("MHPA").[1]  The next day, a mental health review officer conducted a hearing in which Dr. Carol Eidsvoog, staff psychiatrist at Rockview Mental Health Unit, testified that Appellant suffers from anorexia nervosa, the

_____

[1] 50 P.S. § 7304.

binging and purging type.[2]  N.T., 6/3/15, at 7.   Dr. Eidsvoog testified that Appellant had purged to the point of severe electrolyte abnormalities and dehydration and contraction alkalosis, and that without care and assistance, Appellant's behavior could lead to death, disability or serious physical debilitation within thirty (30) days.  *Id.* at 7-8.

Appellant testified that he had been doing very well eating and keeping his food down, and that he felt healthy.  *Id.* at 14.  He further testified that he still had certain struggles at certain times of the day, but that he wanted to go home as soon as possible.  *Id.* at 14-15.

After the hearing, the mental health review officer granted the petition to extend Appellant's involuntary treatment for ninety (90) days.  On June 10, 2015, Appellant filed a petition for review of certification to involuntary inpatient mental health treatment in the Centre County Court of Common Pleas.  On June 12, 2015, the court denied Appellant's petition.  On July 7, 2015, Appellant timely filed a notice of appeal.  On July 13, 2015, the trial court ordered Appellant to file a concise statement of errors complained of

---

[2] Anorexia nervosa is defined as "an eating disorder usually occurring in adolescent females, characterized by refusal to maintain a normal minimal body weight, fear of gaining weight or becoming obese, disturbance of body image, undue reliance on body weight or shape for self-evaluation, and amenorrhea. The two subtypes include one characterized by dieting and exercise alone and one also characterized by binge eating and purging." DORLAND'S MEDICAL DICTIONARY FOR HEALTH CONSUMERS (2007), *available at*, http://medical-dictionary.thefreedictionary.com/anorexia.

on appeal pursuant to Pa.R.A.P. 1925(b), and he timely complied on July 17, 2015.

Appellant raises the following issue for our review:

> WHETHER THE TRIAL COURT LACKED CLEAR AND CONVINCING EVIDENCE FROM WHICH IT COULD CONCLUDE FORCED PSYCHIATRIC TREATMENT UNDER THE MENTAL HEALTH PROCEDURES ACT WAS NECESSARY WHERE IT WAS UNDISPUTED THAT UNFORCED MEDICAL ATTENTION WAS READILY AVAILABLE AT THE PRISON TO ACHIEVE THE TREATMENT OBJECTIVES SOUGHT BY THE PRISON?

Appellant's Brief at 4.[3]

Appellant argues that the state failed to establish, by clear and convincing evidence, that Appellant was in need of involuntary treatment when he was voluntarily working on techniques designed to abate his self-injurious behaviors. We disagree.

"In reviewing a trial court order for involuntary commitment, we must determine whether there is evidence in the record to justify the court's findings." *In re T.T.*, 875 A.2d 1123, 1126 (Pa.Super.2005) (quoting *Commonwealth ex rel. Gibson v. DiGiacinto*, 439 A.2d 105, 107 (Pa.1981)). "Although we must accept the trial court's findings of fact that

---

[3] Although Appellant's 90 day period of involuntary commitment has ended, Appellant's issue is not moot because it is capable of repetition and may evade review. *See In re Woodside*, 699 A.2d 1293, 1296 (Pa.Super.1997).

have support in the record, we are not bound by its legal conclusions from those facts." *Id.*

The MHPA provides:

**§ 7304. Court-ordered involuntary treatment not to exceed ninety days**

**(a) Persons for Whom Application May be Made.**--(1) A person who is severely mentally disabled and in need of treatment, as defined in section 301(a), may be made subject to court-ordered involuntary treatment upon a determination of clear and present danger under section 301(b)(1) (serious bodily harm to others), or section 301(b)(2)(i) (inability to care for himself, creating a danger of death or serious harm to himself), or 301(b)(2)(ii) (attempted suicide), or 301(b)(2)(iii) (self-mutilation).

(2) Where a petition is filed for a person already subject to involuntary treatment, it shall be sufficient to represent, and upon hearing to reestablish, that the conduct originally required by section 301 in fact occurred, and that his condition continues to evidence a clear and present danger to himself or others. In such event, it shall not be necessary to show the reoccurrence of dangerous conduct, either harmful or debilitating, within the past 30 days.

50 P.S. § 7304.

**§ 7305. Additional periods of court-ordered involuntary treatment**

(a) At the expiration of a period of court-ordered involuntary treatment under section 304(g) or this section, the court may order treatment for an additional period upon the application of the county administrator or the director of the facility in which the person is receiving treatment. Such order shall be entered upon hearing on findings as required by sections 304(a) and (b), and the further finding of a need for continuing involuntary treatment as shown by conduct during the person's most recent period of court-ordered treatment. The additional

- 4 -

> period of involuntary treatment shall not exceed 180 days; provided that persons meeting the criteria of section 304(g)(2) may be subject to an additional period of up to one year of involuntary treatment. A person found dangerous to himself under section 301(b)(2)(i), (ii) or (iii) shall be subject to an additional period of involuntary full-time inpatient treatment only if he has first been released to a less restrictive alternative. This limitation shall not apply where, upon application made by the county administrator or facility director, it is determined by a judge or mental health review officer that such release would not be in the person's best interest.

50 P.S. § 7305 (internal footnote omitted).

In order for a person to be committed to an extended period of treatment:

> it is not necessary to show that the patient committed an overt act within 30 days of the hearing. It is necessary however for the court to find that within the patient's most recent period of institutionalization, the patient's conduct demonstrated the need for continuing involuntary treatment, Section 7305(a); *i.e.* his condition continues to evidence a clear and present danger to himself or others, Section 7304(a).

*Commonwealth v. Romett*, 538 A.2d 1339, 1341 42 (Pa.Super.1988).

"It is well-settled that involuntary civil commitment of mentally ill persons constitutes deprivation of liberty and may be accomplished only in accordance with due process protections." *In re R.D.*, 739 A.2d 548, 554 (Pa.Super.1999) (quoting *In re Hutchinson*, 454 A.2d 1008, 1010 (Pa.1982)). "The appropriate standard of proof for certification of extended involuntary treatment is clear and convincing evidence". *In re Hancock*, 719 A.2d 1053, 1056-57 (Pa.Super.1998). "Requiring clear and convincing

evidence that an individual represents a clear and present danger to himself or others places the burden squarely on the facility or individual attempting to commit the individual involuntarily." ***Id.***

The trial court considered the clear and convincing evidence standard and reasoned:

> In this case, these standards were satisfied by testimony of Dr. Carol Eidsvoog, M.D. a staff psychiatrist at Rockview Mental Health Unit who was [Appellant's] treating physician. She testified that [Appellant] suffers from anorexia nervosa, binging and purging type. He posed a danger to himself by binging and purging because he had binged and purged to the point of suffering severe electrolyte abnormalities, dehydration, contraction alkalosis, and medical problems. The contraction alkalosis improved but was still abnormal. He had not reached the target weight the medical doctors sought. He was unable to provide for his own basic needs. [Appellant] was doing better and was developing self-distraction techniques after eating to avoid purging but could not do so by himself and needed help by staff to avoid purging. Without care and assistance there was a reasonable probability of death, disability or serious physical debilitation within 30 days especially with his physical exam abnormalities and lab abnormalities at admission. He has suffered some permanent physical deficits from his history of anorexia nervosa. He was prescribed Remeron for sleep difficulties, vitamin D, and iron supplements. Dr. Eidsvoog sought a Section 304 commitment to keep working therapeutically to help him to avoid purging after meals and to be less restrictive in his food intake. She also planned that he would receive cognitive therapy to deal with stress and control issues. She stated inpatient treatment was the less restrictive environment for him to receive the necessary treatment.
>
> When [Appellant] was ordered to undergo mental health treatment under Section 303, he weighed 97 pounds at 5'11". It was clear to this [c]ourt that [Appellant] was still in need of involuntary mental health treatment for his

anorexia nervosa and without the treatment he had a reasonable probability of death, disability or serious physical debilitation within 30 days. He was unable to provide for his basic need of food/nutrition which was demonstrated by the fact that his labs remained abnormal, he still had contraction alkalosis, he still needed the assistance from staff to avoid purging, and he had not reached his target weight. This [c]ourt does not agree with [Appellant] that the evidence established that unforced medical attention was readily available to achieve the treatment objectives as the therapies recommended were not available outside of the mental health unit.

Trial Court Pa.R.A.P. 1925(a) Opinion, filed August 17, 2015, at 2-3.

Based on our review of the record, we conclude the trial court properly certified Appellant's continued involuntary treatment under Section 7304 based on sufficient evidence of a clear and present danger he presented to himself. *See* 50 P.S.§ 7304(a)(2). Accordingly, we affirm.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/6/2016