J-S12002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: D.W. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.W. | |
| | No. 1544 MDA 2016 |

Appeal from the Order Entered August 25, 2016
In the Court of Common Pleas of Centre County
Civil Division at No(s): 2015-1966

BEFORE:  PANELLA, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J.                    **FILED MARCH 08, 2017**

Appellant, D.W., appeals from the trial court order denying his petition for review of the mental health review officer's certification committing him to involuntary psychiatric treatment for a period of ninety-days pursuant to the Mental Health Procedures Act ("MHPA"). *See* 50 P.S. § 7304. We affirm.

We summarize the relevant facts and procedural history as follows. Appellant is an inmate at Pennsylvania State Correctional Institution ("SCI") Rockview. The psychiatric staff at the prison has followed Appellant beginning, at the latest, in the summer of 2015. Dr. Kevin Burke, an SCI Rockview psychiatrist, diagnosed Appellant as suffering from unspecified psychosis and prescribed medication for his condition. Appellant has consistently refused to take the prescribed medication and has participated very minimally in therapy.

In early August 2016, Dr. Burke testified that Appellant received bad news about his court proceedings and began to tell prison staff members that he wanted to take his own life. Dr. Burke opined that Appellant's suicidal threats were credible and believed that, without treatment, Appellant would act on the threat within thirty days. Additionally, Dr. Burke opined that Appellant was a threat to others because he suffered from a certain type of paranoid delusions. Specifically, Dr. Burke testified that Appellant believed that certain people within the prison had been surveilling him and taking his possessions. Due to his incorporation of specific individuals into his delusions, Dr. Burke noted that the prison had to sequester Appellant to prevent him from lashing out at these people based upon his delusional beliefs.

On August 17, 2016, SCI Rockview filed a petition seeking involuntary psychiatric treatment for Appellant under § 7304 of the MHPA. Finding the prison established a "serious mental disability" pursuant to the MHPA, the mental health officer granted the petition following a hearing on August 18, 2016. Appellant filed a petition for review of the mental health officer's determination. Following review of the record, the trial court denied Appellant's petition, *see* 50 P.S. § 7109(b), on August 25, 2016. This timely appeal follows.

On appeal, Appellant's sole contention is that the trial court erred by allowing the prison to involuntarily treat him without sufficient evidence to establish a reasonable probability of death, serious physical debilitation, or

serious bodily injury in the imminent future, as required for involuntary treatment under § 7301(b)(2)(i) of the MHPA. **See** Appellant's Brief, at 4.

We review a trial court's order for involuntary treatment "not to find the facts but to determine whether there is evidence in the record to justify the hearing court's findings." **Com. ex rel Gibson v. DiGiacinto**, 439 A.2d 105, 107 (Pa. 1981). Accordingly, we must accept the factual findings of the trial court that are supported by the record, but we are not bound by the legal conclusions a trial court draws from those facts. **See id**.

A trial court derives its authority to order involuntary psychiatric treatment from the MHPA. Pursuant to § 7304(a), a trial court may order involuntary treatment, for a period not exceeding ninety days, if the court finds that a person is "severely mentally disabled and in need of treatment." A person is considered to be severely mentally disabled under the MHPA when,

> as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself.

50 P.S. § 7301(a).

To establish that a person is a "clear and present danger" to himself, evidence must be presented that, within the past thirty days, that

> the person has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety,

and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under this act;

50 P.S. § 7301(b)(2)(i).

"Recognizing the substantial curtailment of liberty inherent to an involuntary commitment, our Supreme Court has cautioned that the courts must strictly interpret and adhere to the statutory requirements for commitment." *In re T.T.*, 875 A.2d 1123, 1124 (Pa. Super. 2005) (citing *Commonwealth v. Hubert*, 430 A.2d 1160, 1162-63 (Pa. 1981)). This high standard is not relaxed when applying the MHPA standards to incarcerated individuals. *See Hubert*, 430 A.2d at 1162-63. Significantly,

> [i]n *Gibson* . . . our Supreme Court reversed an order for involuntary commitment of a prisoner, finding insufficient evidence that he posed a clear and present danger to himself or others. A psychiatrist had testified that the inmate was schizophrenic with paranoid delusions and opined that he posed a clear and present danger to himself and others. Testimony was also heard that the inmate had been found extinguishing a burning newspaper in his cell, did not regularly take the psychoactive drug prescribed for him, and had a twisted coathanger in his cell. In spite of his testimony, the Court found involuntary commitment improper, citing no evidence of attempted suicide or self-mutilation; no evidence that the newspaper fire was deliberately set; no evidence that the failure to take medication threatened the inmate's life or well-being; and no evidence that the twisted coathanger was used to threaten or injure anyone. On this record, the Court found that the Commonwealth had not shown "such inability of [the inmate] to attend to his needs as to threaten death, serious bodily injury, or serious physical debilitation."

*In re T.T.*, 875 A.2d at 1127 (citing *Gibson*, 439 A.2d at 107) (internal citations omitted; brackets in original).

Here, Appellant argues that, as was the case in **Gibson**, the prison officials failed to present evidence to show that he was a clear and present danger to himself or others. We recognize that there was no evidence presented to indicate that Appellant committed an overt act in furtherance of a threat to commit suicide or self-mutilation. Additionally, no evidence was offered that Appellant committed an overt act in furtherance of a threat to harm others. Therefore, the only basis for involuntary treatment was if the prison proved, by clear and convincing evidence, that Appellant was unable to care for himself and that there was a reasonable probability of his death, serious bodily injury or serious physical debilitation within thirty days unless commitment was ordered. **See** 50 P.S. § 7301(b)(2)(i). **See also In re Hancock**, 719 A.2d 1053, 1056-57 (Pa. Super. 1998) (requiring clear and convincing evidence as the standard of proof for involuntary treatment).

Instantly, the trial court found that

[e]vidence was presented that Appellant will not satisfy his own needs for medical care. Appellant suffers from unspecified psychosis, suicidal ideation, and has a paranoid set of beliefs reaching delusional proportions. As explained above, Dr. Burke testified that Appellant's condition is likely to continue without treatment. Appellant testified that he is stressed out from receiving bad news regarding his court case, and that he needs to work on his coping skills. Despite this acknowledgement, Appellant refuses to take his prescribed medication or fully participate in therapy. Such refusal supports Dr. Burke's testimony that Appellant is unable to provide for his own basic needs. Specifically, Dr. Burke testified that Appellant is prescribed Narvane, to address his paranoia and delusions, and Cogentin. Dr. Burke testified that Appellant had also exhibited minimal, when any, cooperation in therapy. He explained at times Appellant will not respond, will only use one word answers,

or wave therapy completely at times. Dr. Burke testified that without such care and support there is a reasonable probability Appellant's behavior would lead to death, disability, or serious physical debilitation. Dr. Burke is aware of Appellant's ongoing mental health diagnosis and history, suicidal ideation, threats [of] harm to others, and refusal to seek and accept medical care to address his issues. As such, the requirements of 7301(b)(2)(i) have also been met.

Trial Court Opinion, 10/12/16, at 3-4.

Our review of the record supports the trial court's conclusion that the prison presented clear and convincing evidence that there was "a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under the act." 50 P.S. § 7301(b)(2)(i). Unlike the evidence presented in *Gibson*, there was evidence presented here that the failure to take his medication and participate in therapy threated Appellant's life. Dr. Burke opined that Appellant's credible threats of suicide could not be curtailed without Appellant's participation in therapy and/or medication. Further, because the uncontroverted evidence established that Appellant's suicidal ideations had only emerged a week prior to the prison seeking involuntary treatment, we find that the trial court's conclusion that "death, serious bodily injury or serious physical debilitation would ensure within 30 days" is sound. Thus, presented with these facts, we find that the trial court did not err in determining that the statutory requirements for involuntary commitment had been met.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/8/2017