J-A14041-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

IN RE: J.N.  :  IN THE SUPERIOR COURT OF
 :  PENNSYLVANIA
 :
 :
 :
 :
 :
APPEAL OF: J.N.  :  No. 28 WDA 2020

Appeal from the Order Entered December 4, 2019
in the Court of Common Pleas of Allegheny County
Orphans' Court at No(s):  583-2019

BEFORE:  SHOGAN, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:  FILED OCTOBER 15, 2020

J.N. appeals from the Order stating that the Mental Health Review Officer's ("MHRO") Order certifying J.N.'s extended involuntary commitment, pursuant to section 7303 of the Mental Health Procedures Act (the "Act"),[1] remained the controlling legal directive over J.N.  In issuing its Order, the trial court effectively denied J.N.'s Petition to review the MHRO's certification.  We reverse.

On November 7, 2019, University of Pittsburgh Police Officer Michael Talvola ("Officer Talvola") responded to a 911 call at a dormitory complex. Upon arriving, he encountered J.N., sitting in a hallway, with multiple open wounds on his neck, arms, and thighs.  J.N. told Officer Talvola that he wanted to kill himself; he had cut himself with a razor blade; and several days earlier, he had taken all of his prescription medications with the intention of killing

_____

[1] 50 P.S. §§ 7101-7503.

himself. J.N. was transported to UPMC – Presbyterian Hospital ("UPMC – Presbyterian"), where he received treatment for his injuries, which included more than 120 sutures to close his wounds. Officer Talvola prepared paperwork for a temporary involuntary commitment pursuant to section 7302 of the Act ("section 302").[2] Garrett Sparks, M.D., who treated J.N. at UPMC – Presbyterian, certified the section 302 commitment paperwork.

In the early morning hours of November 7, 2019, J.N. finished receiving treatment at UPMC – Presbyterian for his physical injuries, and was transported to UPMC – Western Psychiatric Hospital ("WPIC") for further treatment. Later that morning, J.N. was evaluated by Patrick Buckley, M.D. ("Dr. Buckley"). After his evaluation of J.N., Dr. Buckley filed an Application for extended involuntary treatment pursuant to section 7303 of the Act ("section 303").

On November 8, 2019, J.N. appeared before a MHRO for a hearing on the section 303 commitment certification (the "MHRO Hearing"). Officer Talvola, Dr. Buckley, and J.N. testified at the hearing, after which the MHRO signed the section 303 commitment certification, finding that there was clear and convincing evidence that J.N. met the statutory requirements for

_____

[2] Section 302 permits confinement of a patient for involuntary emergency examination and treatment for up to 120 hours, upon the certification of a physician stating the need for such examination. See 50 P.S. § 7302(a), (d).

involuntary commitment. J.N. was discharged from WPIC on November 12, 2019.

On November 13, 2019, J.N. filed a Petition for review of the section 303 commitment certification. The trial court conducted a hearing on the Petition for review on November 15, 2019 (the "November Conference"). Prior to commencing the hearing, the trial court met with both parties' counsel. At that time, the trial court stated that it had listened to the tape recording of the MHRO Hearing, and suggested that counsel for both parties listen to the tape themselves, in order to fully understand the candor and nature of the parties' testimony at the MHRO Hearing. After some discussion, J.N. moved for a continuance in order to better prepare for the hearing, which the trial court granted. No testimony or other documentary evidence was entered into the record at the November Conference.

On December 2, 2019, the trial court held the continued proceedings on J.N.'s Petition (the "December Hearing"). At the December Hearing, J.N. and counsel for the Allegheny County Office of Behavioral Health expressed to the trial court that both parties wished to strike the section 303 commitment, based on the fact that J.N. had been discharged, and that he was at WPIC "for a short period of time such that he could have received the same amount of treatment under a 302 certification." N.T., 12/2/19, at 2. In response, the trial court stated that there was no matter before it that it could rule on, incorporated its discussion with counsel from the November Conference, and

stated, "I am not ruling. It is your decision, so do what you believe is prudent. That would be my thought." Id. at 4.

On December 4, 2019, the trial court issued an Order where, in part, it stated the following:

> At the December [Hearing], both counsel's positions were united. They agreed that the [P]etition for review was withdrawn. As such, there was nothing before th[e trial c]ourt to rule upon. The [c]ourt's de novo review is triggered only upon the [P]etition being before the [C]ourt. Upon withdraw[al] of the [P]etition, the hearing officer's [section 303] commitment [O]rder remains the controlling legal directive regarding [J.N.] The [c]ourt ends with [the] observation that neither party – knowing their goal was to somehow get the [section] 303 determination vacated – presented any evidence whatsoever at the December [Hearing]. Given the [c]ourt's de novo standard of review, the [c]ourt could have entertained additional evidence.

Trial Court Order, 12/4/19.

On December 12, 2019, J.N. filed a Motion for reconsideration, wherein he requested again that the section 303 certification be stricken and vacated or, in the alternative, that the trial court conduct a new hearing to allow for the presentation of evidence. On December 19, 2019, the trial court issued an Order granting a new hearing on the Petition, which was scheduled for January 24, 2020.

However, J.N. filed a Notice of Appeal to this Court on January 3, 2020, and the trial court cancelled the scheduled hearing.[3]  The trial court did not order a Pa.R.A.P. 1925(b) Concise Statement, and instead relied on the rationale stated in its December 4, 2019, Order.

J.N. raises the following issue for our review:

I. Did the [trial] court err in failing to strike the [s]ection 303 Commitment Order[,] as requested by the attorney for Allegheny County at the review hearing, for two reasons: (1) the proper procedures were not followed under the Act, and (2) no evidence that J.N. was severely mentally disabled and in need of immediate treatment was presented at the hearing?

Brief for Appellant at 6.[4]

J.N. argues that the trial court's denial of his section 303 Petition for review was improper because there was insufficient evidence produced at the review hearing to support the commitment.  Id. at 25.  J.N. alleges that the

_____

[3] The trial court's December 19, 2019, Order only "grant[ed J.N.'s] request to the extent that a hearing was the relief being sought."  Trial Court Order, 12/19/19.  We note that J.N.'s appeal properly lies from the trial court's December 4, 2019, Order, wherein it stated that the section 303 commitment Order would "remain the controlling legal directive" regarding J.N.  Trial Court Order, 12/4/19.  J.N. filed his Notice of Appeal on January 3, 2020, within 30 days of the trial court's Order.

[4] We note that the record confirms that J.N.'s involuntary commitment has ended.  Even though J.N. is no longer involuntary committed, "his appeal is not moot because the issues are 'capable of repetition and may evade review.'"  In re Ryan, 784 A.2d 803, 805 n.4 (Pa. Super. 2001).  "We may review the issues, vacate the involuntary commitment order, and expunge the records."  Id. (citing In re R.D., 739 A.2d 548 (Pa. Super. 1999)); In re J.K., 595 A.2d 1287, 1289 (Pa. Super. 1991) (stating that an expired commitment order is appealable because of the important liberty issues involved).

trial court failed to properly develop a record at either the November Conference or the December Hearing. Id. at 27-29. J.N. argues that the evidence was insufficient to support a section 303 commitment order, and as a result, the commitment order was unlawful. Id. at 32. Accordingly, J.N. asserts that the section 303 commitment certification should be vacated, and his record expunged. Id. at 34.

In reviewing a trial court's order for an involuntary commitment, we must "determine whether there is evidence in the record to justify the court's findings." In re T.T., 875 A.2d 1123, 1126 (Pa. Super. 2005). "Although we must accept the trial court's findings of fact that have support in the record, we are not bound by its legal conclusions from those facts." Id.

This issue implicates J.N.'s due process rights under the Act. "It is well settled that involuntary civil commitment of mentally ill persons constitutes deprivation of liberty and may be accomplished only in accordance with due process protections." In re Hutchinson, 454 A.2d 1008, 1010 (Pa. 1982); In re Hancock, 719 A.2d 1053, 1056-57 (Pa. Super. 1998). "Recognizing the substantial curtailment of liberty inherent to an involuntary confinement, our Supreme Court has cautioned that the courts must strictly interpret and adhere to the statutory requirements for commitment." In re T.T., 875 A.2d at 1124. "When balancing the needs of the state in protecting mentally ill persons and others in society against the liberty interests of the individual sought to be committed, we find that due process protections demand the

application of the clear and convincing evidence standard of proof in cases pursuant to [section 303]." In re Hancock, 719 A.2d at 1058.

When an appellant's due process rights under the Act are violated, "we may vacate the certification for involuntary treatment pursuant to section []303, and direct that all records pertaining to this matter be expunged." In re Ryan, 784 A.2d at 808. While a trial court's review of a 303 commitment does not require a full, de novo hearing, it does require some hearing. In re T.J., 739 A.2d 478 (Pa. 1999). Because the MHRO cannot enter a final order, the review hearing before the trial court is akin to a de novo hearing. Id. at 480.

The Act provides for involuntary emergency examination and treatment of persons who are "severely mentally disabled and in need of immediate treatment." 50 P.S. § 7301(a). As the Act explains, in relevant part,

> [a] person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself, as defined in subsection (b) ....

Id.

Regarding the requirement that the individual pose a "clear and present danger of harm," the Act provides, in relevant part, as follows:

> (b) Determination of Clear and Present Danger.--
>
> (1) Clear and present danger to others shall be shown by establishing that within the past 30 days the person has inflicted or attempted to inflict serious bodily harm on another

and that there is a reasonable probability that such conduct will be repeated. … For the purpose of this section, a clear and present danger of harm to others may be demonstrated by proof that the person has made threats of harm and has committed acts in furtherance of the threat to commit harm.

(2) Clear and present danger to himself shall be shown by establishing that within the past 30 days:

(i) the person has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under this [A]ct[.]

Id. § 7301(b).

Our review discloses that J.N. was initially admitted to UPMC – Presbyterian under section 302 of the Act.[5]  Then, upon Application of WPIC, J.N.'s involuntary commitment was extended for a period of up to 20 days pursuant to section 303 of the Act, which provides, in relevant part, as follows:

§ 7303. Extended involuntary emergency treatment certified by a judge or mental health review officer—not to exceed twenty days

(a) Persons Subject to Extended Involuntary Emergency Treatment.—Application for extended involuntary emergency treatment may be made for any person who is being treated pursuant to section 302 whenever the facility determines that the need for emergency treatment is likely to extend beyond 120 hours.  The application shall be filed forthwith in the court of common pleas, and shall state the grounds on which extended emergency treatment is believed to be necessary. The application shall state the name of any examining physician and the

_____

[5] J.M. does not challenge his section 302 commitment on appeal.

substance of his opinion regarding the mental condition of the person.

* * *

(c) Informal Conference on Extended Emergency Treatment Application.—

(1) At the commencement of the informal conference, the judge or the mental health review officer shall inform the person of the nature of the proceedings. Information relevant to whether the person is severely mentally disabled and in need of treatment shall be reviewed, including the reasons that continued involuntary treatment is considered necessary. Such explanation shall be made by a physician who examined the person and shall be in terms understandable to a layman. The judge or mental health review officer may review any relevant information even if it would be normally excluded under rules of evidence if he believes that such information is reliable. The person or his representative shall have the right to ask questions of the physician and of any other witnesses and to present any relevant information. At the conclusion of the review, if the judge or the review officer finds that the person is severely mentally disabled and in need of continued involuntary treatment, either as an inpatient or through less restrictive assisted outpatient treatment, he shall so certify. Otherwise, he shall direct that the facility director or his designee discharge the person.

* * *

(g) Petition to Common Pleas Court.—In all cases in which the hearing was conducted by a mental health review officer, a person made subject to treatment pursuant to this section shall have the right to petition the court of common pleas for review of the certification. A hearing shall be held within 72 hours after the petition is filed unless a continuance is requested by the person's counsel. The hearing shall include a review of the certification and such evidence as the court may receive or require. If the court determines that further involuntary treatment is necessary and

>that the procedures prescribed by this act have been followed, it
>shall deny the petition. Otherwise, the person shall be discharged.

50 P.S. § 7303(a), (c)(1), (g).

Here, we cannot conclude that an adequate "hearing" on J.N.'s Petition for review occurred, nor can we conclude that the trial court or the parties followed the strict protocol detailed in section 303(g). Initially, the trial court did not accept evidence into the record, in the form of the section 303 commitment certification, as is required in section 303(g). 50 P.S. § 7303(g) (stating that "[t]he hearing shall include a review of the certification and such evidence as the court may receive or require.") (emphasis added). The trial court did not hear testimony from witnesses, doctors, or from J.N., and did not incorporate the audiotape or transcript from the MHRO Hearing into the trial court record at either the November Conference or the December Hearing. At the December Hearing, the trial court incorporated the discussion he had with both counsel at the November Conference. N.T. (Hearing), 12/2/19, at 4. However, the November Conference only included a discussion between the trial court and counsel regarding the audiotaped recording of the MHRO Hearing, the trial court's belief that the parties should listen to the tape themselves before moving forward, and a Motion for a continuance by J.N. in order to listen to the tape and prepare for a full hearing on the matter. See

N.T., 11/19/19, at 3-31.[6]  Further, at the December Hearing, the parties stated that they had agreed that the section 303 commitment should be stricken, and neither party presented any evidence or testimony to the trial court.  As a result, the trial court did not have any evidence admitted into the record, much less the commitment certification as required by section 303(g), when it issued its December 4, 2019 Order, effectively denying J.N.'s Petition.

Based on the foregoing, we conclude that the County failed to prove to the trial court that J.N.'s section 303 commitment certification was supported by clear and convincing evidence.  Accordingly, the trial court's December 4, 2019, Order which, in effect, denied J.N.'s Petition for review, must be reversed.  We further direct that the trial court vacate the November 8, 2019, Order of the MHRO certifying J.N.'s section 303 commitment, and expunge the record of such commitment.  See In re Estate of S.G.L., 885 A.2d 73, 76 (Pa. Super. 2005) (reversing and directing the trial court to vacate a

_____

[6] Our review of the transcript of both the November Conference and the December Hearing demonstrates that the trial court extensively studied the audiotape of the MHRO Hearing, which it described as "chilling," and that the contents of the tape are in "a different stratosphere" from other MHRO hearing tapes presented in past cases.  N.T., 11/19/19, at 14, 23.  However, in this unusual procedural circumstance, we are constrained to determine that the trial court could not find that the section 303 commitment was supported by clear and convincing evidence when, plainly, the November Conference and the December Hearing did not include any evidence at all.

commitment order when the procedural dictates of section 303 were not satisfied); see also In re Ryan, 784 A.2d at 808.[7]

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/15/2020

---

[7] Based on this disposition, we need not address J.N.'s issue of whether sufficient evidence existed for the MHRO to certify J.N.'s section 303 commitment.