J-A25018-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: PETITION OF C.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ALLEGHENY COUNTY DEPARTMENT | : | |
| OF BEHAVIORAL HEALTH AND THE | : | |
| PENNSYLVANIA STATE POLICE | : | |
| | : | |
| | : | |
| APPEAL OF: C.S. | : | No. 159 WDA 2021 |

Appeal from the Order Entered January 5, 2021
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): 0564-2019

BEFORE: KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.: **FILED: MARCH 18, 2022**

Appellant, C.S., appeals from the order entered in the Allegheny County Court of Common Pleas, Orphans' Court, which denied her petition to expunge her mental health commitment under the Mental Health Procedures Act ("MHPA").[1] We affirm.

In its opinion, the Orphan's Court set forth the facts and procedural history of this case as follows:

> [Appellant] is an individual engaged in a successful accounting practice in Allegheny County, Pennsylvania. [Appellant], a resident of the City of Pittsburgh, is unmarried and has one child, an adult son. At all times pertinent to this case, [Appellant]'s son resided in Waltham, Massachusetts, with his wife and infant child.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 50 P.S. §§ 7101-7503.

On October 16, 2019, [Appellant]'s son received a telephone call from a family friend who informed the son that [Appellant] was at that time attempting to obtain a firearm and that she had expressed an intention to shoot and kill her son, his family, herself and "anybody that was to get in her way." [Appellant]'s son immediately reported the matter to the Waltham police who, in turn, alerted local, Pittsburgh Police.

Several hours later, [Appellant] herself telephoned Pittsburgh Police and stated that she had just purchased a pistol, had completed revisions to her will, and that, as soon as she had signed the revised will, she planned on shooting herself. Pittsburgh Police thereupon obtained a warrant pursuant to Section 302 of the [MHPA] and visited [Appellant]'s apartment. There, they encountered [Appellant]'s landlord who admitted the police to the apartment. [Appellant] was not at her apartment, however, and it was then determined that [Appellant] may have gone to her office in Wilkins Township. At the request of Pittsburgh Police, Wilkins Township Police located and detained [Appellant] and, consistent with the Section 302 warrant, transferred [Appellant] to Pittsburgh Police. Pittsburgh Police then escorted [Appellant] to Western Psychiatric Institute and Clinic ("WPIC") for evaluation.

A review of the October 17, 2019 Application for Involuntary Emergency Treatment and Medical Examination prepared at WPIC indicates that [Appellant] was deemed to be a clear and present danger to herself and others because (1) she had "inflicted or attempted to inflict serious bodily harm on another and there [was] a reasonable probability that such conduct [would] be repeated and (2) she had attempted suicide and there [was a] reasonable probability of suicide unless adequate treatment [was] provided." The application noted that the report received from Waltham, Massachusetts, had indicated that [Appellant] claimed to be in possession of a firearm and that she intended to use the weapon to "shoot and kill." According to the application, during [Appellant]'s later call to Pittsburgh Police, she stated that she intended to shoot herself.

The examining physician at WPIC, Dr. Gandotra, made the

finding that [Appellant] "[was] severely mentally disabled and in need of treatment." Accordingly, a Section 302 commitment for a period of treatment not to exceed 120 hours followed. Specifically, it was determined by Dr. Gandotra that [Appellant] had attempted suicide and that, absent adequate treatment while under admission pursuant to 302, there was a reasonable probability of suicide. A second physician, Psychiatrist Dr. Fraser, examined [Appellant] on the following day, October 18, and determined at that time that [Appellant] was unable to sign an informed consent. Dr. Fraser confirmed the Section 302 finding and determined, additionally, that [Appellant] may be a candidate for an extended, Section 303 commitment. Dr. Fraser noted, moreover, that [Appellant] "admits to 302 allegations."

On October 21, 2019, another physician, Dr. Tew, interviewed [Appellant] for the purpose of providing a second opinion regarding the appropriateness of discharge rather than an extended commitment. … On the following day, Dr. Tew submitted his report, which concluded that "the doctrine of least restrictive [alternative] of care warranted [Appellant]'s discharge back to the community." Consistent with that analysis, the application for extended involuntary treatment and detention of [Appellant] within WPIC pursuant to Section 303 of the [MHPA] was abandoned.

(Orphans' Court Opinion, filed 5/12/21, at 2-4) (internal citations and footnotes omitted).

On January 16, 2020, Appellant filed a petition to vacate and expunge the involuntary civil commitment and for restoration of rights. Following a hearing, the Orphans' Court denied Appellant's petition on January 5, 2021. Appellant timely filed a notice of appeal on February 2, 2021. On February 4, 2021, the court ordered Appellant to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on February 25,

2021.

Appellant raises the following issue for our review:

> Did the [Orphans' Court] err as a matter of law when it denied to vacate and expunge a 302 involuntary confinement, where there was insufficient legislatively-defined prerequisite evidence to support the involuntary mental health commitment of Appellant pursuant to 50 P.S. § 7302?

(Appellant's Brief at 4).

Appellant argues that a 302 involuntary commitment requires a finding that she was severely mentally disabled and posed a clear threat to herself. Appellant asserts that "[t]here is nothing in the examining physician's findings that supports a determination that Appellant was severely mentally disabled." (*Id.* at 12). Specifically, Appellant notes that the treating physician did not diagnose Appellant of a mental illness or recommend specific treatment. Appellant further alleges that there is no evidence that she undertook any acts in furtherance of a threat to commit suicide as required to establish that she was a clear threat to herself. Appellant insists that "suicidal statements or ideation are not sufficient evidence to meet the requirements of the legislatively-defined prerequisites for a 302 involuntary confinement." (*Id.* at 13). Appellant concludes that there is insufficient evidence to support her 302 involuntary commitment, and this Court must grant her expungement petition. We disagree.

"Our well-settled standard of review in cases involving a motion for expunction is whether the trial court abused its discretion." *In re Keyes*, 83

A.3d 1016, 1022 (Pa.Super. 2013) (citing **Commonwealth v. A.M.R.**, 887 A.2d 1266, 1268 (Pa.Super. 2005)).   Section 6111.1(g)(2) of the Pennsylvania Uniform Firearms Act addresses the process for expunging records of an involuntary commitment.  Section 6111.1(g)(2) states:

> **§ 6111.1.  Pennsylvania State Police**
>
> \* \* \*
>
> **(g) Review by court.—**
>
> \* \* \*
>
> 2) A person who is involuntarily committed pursuant to section 302 of the Mental Health Procedures Act may petition the court to review the sufficiency of the evidence upon which the commitment was based.  If the court determines that the evidence upon which the involuntary commitment was based was insufficient, the court shall order that the record of the commitment submitted to the Pennsylvania State Police be expunged. A petition filed under this subsection shall toll the 60-day period set forth under section 6105(a)(2).

18 Pa.C.S.A. § 6111.1(g)(2) (internal footnote omitted).  Our Supreme Court has explained:

> [U]nder section 6111.1(g)(2), a challenge to the sufficiency of the evidence to support a 302 commitment presents a pure question of law, and the court's sole concern is whether, based on the findings recorded by the physician and the information he or she relied upon in arriving at those findings, the precise, legislatively-defined prerequisites for a 302 commitment have been satisfied and are supported by a preponderance of the evidence.  We emphasize that the trial court's review is limited to the findings recorded by the physician and the information he or she relied upon in arriving at those findings, and requires deference to the physician, as the original factfinder, as the physician examined and evaluated the individual in the first instance,

was able to observe his or her demeanor, and has particularized training, knowledge and experience regarding whether a 302 commitment is medically necessary.

*In re Vencil*, 638 Pa. 1, 19-20, 152 A.3d 235, 246 (2017), *cert. denied*, ___ U.S. ___, 137 S.Ct. 2298, 198 L.Ed.2d 751 (2017).

Sections 7301 and 7302 of the MHPA deal with involuntary emergency examination and treatment of individuals, and provide, in relevant part:

> **§ 7301. Persons who may be subject to involuntary emergency examination and treatment**
>
> **(a) Persons Subject.**—Whenever a person is severely mentally disabled and in need of immediate treatment, [she] may be made subject to involuntary emergency examination and treatment. A person is severely mentally disabled when, as a result of mental illness, [her] capacity to exercise self-control, judgment and discretion in the conduct of [her] affairs and social relations or to care for [her] own personal needs is so lessened that [she] poses a clear and present danger of harm to others or to [her]self.
>
> **(b) Determination of Clear and Present Danger.**—
>
> \* \* \*
>
> (2) Clear and present danger to [her]self shall be shown by establishing that within the past 30 days:
>
> \* \* \*
>
> > (ii) the person has attempted suicide and that there is the reasonable probability of suicide unless adequate treatment is afforded under this act. For the purposes of this subsection, a clear and present danger may be demonstrated by the proof that the person has made threats to commit suicide and has committed acts which are in furtherance of the threat to commit suicide[.] …

50 P.S. § 7301(a), (b)(2)(ii).

**§ 7302. Involuntary emergency examination and treatment authorized by a physician--Not to exceed one hundred twenty hours**

**(a) Application for Examination.—**Emergency examination may be undertaken at a treatment facility upon the certification of a physician stating the need for such examination; or upon a warrant issued by the county administrator authorizing such examination; or without a warrant upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination.

> **(1) Warrant for Emergency Examination.—**Upon written application by a physician or other responsible party setting forth facts constituting reasonable grounds to believe a person is severely mentally disabled and in need of immediate treatment, the county administrator may issue a warrant requiring a person authorized by him, or any peace officer, to take such person to the facility specified in the warrant.

* * *

**(b) Examination and Determination of Need for Emergency Treatment.—**A person taken to a facility shall be examined by a physician within two hours of arrival in order to determine if the person is severely mentally disabled within the meaning of section 301(b)1 and in need of immediate treatment. If it is determined that the person is severely mentally disabled and in need of emergency treatment, treatment shall be begun immediately. If the physician does not so find, or if at any time it appears there is no longer a need for immediate treatment, the person shall be discharged and returned to such place as he may reasonably direct. The physician shall make a record of the examination and his findings. In no event shall a person be accepted for involuntary emergency treatment if a previous application was granted for such treatment and the new application is not based on behavior occurring after the earlier application.

* * *

**(d) Duration of Emergency Examination and Treatment.**—A person who is in treatment pursuant to this section shall be discharged whenever it is determined that [she] no longer is in need of treatment and in any event within 120 hours, unless within such period:

> (1) [she] is admitted to voluntary treatment pursuant to section 202 of this act; or

> (2) a certification for extended involuntary emergency treatment is filed pursuant to section 303 of this act.

50 P.S. § 7302(a)(1), (b), (d).

Involuntary commitment under Section 7302 is proper "where there are reasonable grounds to believe a person is severely mentally disabled and in need of immediate treatment." *In re Jacobs*, 15 A.3d 509, 510 (Pa.Super. 2011) (citing *In re Hancock*, 719 A.2d 1053, 1055 (Pa.Super. 1998)). "[I]t is not sufficient to find only that the person is in need of mental health services. It must also be established that there is a reasonable probability of death, serious injury or serious physical debilitation to order commitment." *In re R.F.*, 914 A.2d 907, 913-14 (Pa.Super. 2006), *appeal denied*, 593 Pa. 741, 929 A.2d 1162 (2007) (citing *In re T.T.*, 875 A.2d 1123 (Pa.Super. 2005)).

"Persons are classified as severely mentally disabled when their ability to exercise self-control or to care for themselves is so lessened that they pose a clear and present danger of harm to others or themselves." *In re R.F., supra* at 913. The MHPA states that a person poses a clear and present harm to him or herself if "the person has attempted suicide and that there is the

reasonable probability of suicide unless adequate treatment is afforded under this act." 50 P.S. § 7301(b)(2)(ii). "[A] suicide attempt occurs when a person clearly articulates or demonstrates an intention to commit suicide and has committed an overt action in furtherance of the intended action." *In re R.F., supra* (citing 55 Pa.Code § 5100.84(g)).

"[E]ngaging in the planning process by conducting research or expressing a detailed plan constitute acts in furtherance of a threat under the MHPA." *In re B.W.*, ___ Pa. ___, ___, 250 A.3d 1163, 1176 (2021) (communicating a developed plan to harm coworker was sufficient to establish acts in furtherance of threat of harm to another). *See also Commonwealth v. Smerconish*, 112 A.3d 1260, 1264 (Pa.Super. 2015) (sending repeated instant messages to sister threatening suicide and researching ways to commit suicide constituted acts in furtherance of threat to commit suicide); *In re R.F., supra* (researching ways to commit suicide and calling a suicide hotline constituted acts in furtherance of threat to commit suicide).

Instantly, the record belies Appellant's assertion that the examining physician did not determine that Appellant was severely mentally disabled. Dr. Gandotra's report notes that Appellant is dysphoric, tearful, endorses being depressed and hurt, and acknowledges making suicidal statements even though she stated that she would not follow through. Dr. Gandotra also clearly marked the box indicating his decision that Appellant was severely mentally disabled and in need of treatment pursuant to the statutory requirements for

a 302 involuntary commitment. Although Dr Tew's subsequent report recommended against an extended 303 commitment, Dr. Tew did not opine that the initial 302 commitment was inappropriate or unwarranted.[2] As such, the medical records clearly indicate that the examining physician determined that Appellant was severely mentally disabled and required immediate commitment pursuant to Section 302.

Further, we agree with the Orphans' Court that sufficient evidence supported the examining physician's evaluation of Appellant. The record indicates that Appellant stated to a family friend that she was attempting to purchase a firearm to shoot herself. Following this, Appellant telephoned Pittsburgh police and articulated a developed plan to purchase a firearm, revise her will to exclude her son, and shoot herself as soon as she signed the revised will. She repeated this plan to Pittsburgh police three times. Appellant's actions in calling Pittsburgh police and articulating a detailed plan to commit suicide are sufficient to establish acts in furtherance of the threat of suicide. *See In re B.W., supra*; *Smerconish, supra*; *In re R.F., supra*. Based on this record, the Orphans' Court acted properly in refusing to disturb the medical determination of the examining physician, whose findings are

---

[2] Section 7303 of the MHPA states "[a]pplication for extended involuntary emergency treatment may be made for any person who is being treated pursuant to section 302 whenever the facility determines that the need for emergency treatment is likely to extend beyond 120 hours." 50 P.S. § 7303(a).

owed deference as the original factfinder. ***See In re Vencil, supra***. Therefore, we see no abuse of discretion in the Orphans' Court's denial of Appellant's petition to expunge records of her 302 involuntary civil commitment. ***See In re Keyes, supra***. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/18/2022